# Wefel *v*. Stillman.

## *Assumpsit.*

(Decided June 4, 1907. 44 South. 203.)

1. *Contract; Suit On; Complaint; Sufficiency.*—A complaint alleging that plaintiff had been authorized to sell certain lands by the owners thereof and that it was agreed between plaintiff and defendant that if defendant would find a purchaser, plaintiff and defendant would divide the commissions thereon and that the defendant had recovered the commission in a suit against the owner and that such commissions were earned under and pursuant to the agreement between plaintiff and defendant, and that defendant refused to pay plaintiff his share, fails to aver with sufficient clearness the employment of defendant by plaint..., his acceptance and performance of the service under such employment whereby the commissions were earned by and paid to him.

2. *Pleading; Motion to Strike; Remedy.*—Where the facts alleged are not supposed to constitute a cause of action or defense, the objection must be raised by demurrer; a motion to strike should not be addressed to pleadings unless they are frivolous, unnecessarily prolix or irrelevant.

3. *Same; General Issue.*—Where there is a plea of the general issues interposed, another plea formally pleading the general issue may be stricken as unnecessary on motion directed to it alone.

4. *Estoppel in Pais; Availability at Law.*—The only estoppels which are available in equity and not in law are such as depends on title to land and relations not cognizable at law.

5. *Pleading; Motion to Strike; Demurrer.*—A plea in defense of an action on the contract betwen plaintiff and defendant for the recovery of commission for the sale of real estate, which alleges that after the defendant had found a purchaser, plaintiff renounced the contract of defendant, and claimed and received from the owners the commission for himself, thereby compelling defendant to bring suit against the owner to recover his commission and putting him to the unnecessary costs and dangers of litigation, and that by reason thereof plaintiff was estopped from claiming any of the commission recovered by defendant in his suit against the owner, was not irrelevant and subject to a motion to strike, but its sufficiency should be tested by demurrer.

6. *Brokers; Agreement to Divide Commission; Estoppel.*—Where the complaint alleged that plaitiff was authorized to sell land by the owners thereof and that he agreed to divide the commission with the defendant if the latter would find a purchaser; that defendant recovered of the owners the commission on the sale of the land but refused to pay plaintiff his share, a plea interposed by defendant alleging that during the negotiation for the sale of the land

plaintiff worked in opposition to defendant and endeavored to make sales to other parties, thereby estopping him from claiming that he was jointly interested with defendant in selling the land, is irrelevant and properly stricken, there being nothing in the pleadings to indicate that plaintiff was not entitled to find a purchaser himself.

7. *Same; Scope of Proof.*—As a defense to an action between broker and sub-broker for commissions on sale of lands, under the facts pleaded in this case, a plea alleging that plaintiff was not the party really interested in the action, because he had been paid by the owner and had agreed to hold him harmless against claims for commissions made by any one claiming under plaintiff, and that plaintiff's action was for the purpose of recovering part of the commission paid defendant in order that it might be repaid to the owners under plaintiff's contract of guaranty, does not limit the defendant to proof of facts alleged to sustain the plea.

8. *Appeal; Harmless Error.*—The error in sustaining a demurrer to a plea was harmless where there was a plea of the same kind to which no demurrer was sustained.

9. *Witnesses; Cross Examination.*—Where plaintiff and the owner testified that the agency of plaintiff in the sale of the land was exclusive, plaintiff may be properly asked on cross examination if he did not know at the time that the owner had other agencies for the sale of the land.

10. *Same.*—In an action between broker and sub-broker for commissions for the sale of real estate, under an issue that plaintiff was not the real party interested because he had collected commissions from the owner under an agreement to hold the owner harmless against the payment of other commissions, plaintiff was properly asked on cross examination if he had not collected the commissions.

11. *Same.*—Defendant was entitled to ask plaintiff on cross examination if plaintiff did not say at the trial of the action by defendant against the owner for the commissions, that he would give plaintiff 25 cents for his chances to win.

12. *Evidence; Competency.*—The plaintiff and the owner having stated what passed between them and between the owner and defendant as to the authority given plaintiff and defendant regarding a sale of the land, the defendant should have been allowed to give his version of what passed between him and the owner.

13. *Evidence; Correspondence.*—The correspondence relative to the contract and sale which passed between plaintiff and defendant both before and after the sale was admissible.

14. *Same.*—The correspondence between defendant and the owner respecting defendant's authority and the nature of his dealings with the owner was admissible as tending to show the authority given defendant by the owner and what he did thereunder.

15. *Brokers; Commissions; Instructions.*—There being evidence tending to show that defendant contracted with plaintiff with reference to a sale to a certain party only, which sale failed, the defendant was entitled to an instruction that plaintiff could not recover if the contract was thus limited.

16. *Contracts; Unilateral Contracts.*—If the agreement between defendant and plaintiff was to share the commissions with defendant in case the latter found a purchaser, the contract was unilateral and binding on neither party until defendant found a purchaser.

17. *Witness; Discrediting Testimony.*—A party as a witness may be discredited by proof of conduct inconsistent with his prescent contention or statement.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by John E. Stillman against Herman W. Wefel, Jr. Judgment for plaintiff, and defendant appeals. Reversed.

The third count of the complaint is in the following language: "The plaintiff claims of the defendant the further sum of $8,333.33 1-3 with interest from the 9th day of March, 1905, it being one-third of the amount, with interest thereon, paid to the defendant on, to-wit, the 9th day of March, 1905, in satisfaction of the judgment rendered in his favor against James T. Creary, Andrew J. Adams, and Ralph G. Bushnell, partners under the firm name of Simpson & Co., in the Circuit Court of the United States for the Northern District of Florida, for commissions to the defendant as agent or broker in connection with the sale of real estate, and which commissions were earned under and pursuant to an agreement between the plaintiff and the defendant, as follows, viz.: Defendants in said Circuit Court of the United States for the Northern District of Florida authorized plaintiff to sell said lands for them for a commission, and it was agreed between the plaintiff and the defendant that, if defendant would find a purchaser for said land, he and plaintiff would divide the commission in the proportion of one-third to the plaintiff and two-thirds to the defendant, and the commissions so recovered and received by the defendant were earned under and pursuant to such agreement, but the defendant nevertheless has wholly failed and refused to pay plain-

tiff said sum, or any part thereof, though often re-
quested so to do." The first count varies from this only
in amount.

Quite a number of demurrers were filed to these
counts, but it seems unnecessary to set them out, as the
criticism in the opinion of the complaint shows what
points were raised. Grounds of demurrer Nos. 10, 12,
13, 21, 22, and 23 were as follows:

"(10) Because said count does not show that said
Stillman's agency was exclusive, and that the agency of
said Wefel, pursuant to which said judgment was ob-
tained in the United States court, was subordinate
thereto, and said count does not negative the existence
of the fact, apparent from the complaint, that Wefel
was also a direct agent of Simpson & Co., and that the
commissions received under said judgment were earned
under and pursuant to said direct agency."

"(12) Because it is necessarily inferable from the
allegations of said count that said Wefel obtained said
judgment in said United States court for commissions
on a land sale, and that he (said Wefel) was a direct
agent of Simpson & Co. for said purpose; and while it
may be true, as alleged by the complaint, that the plain-
tiff, Stillman, and defendant, Wefel, agreed to divide
commissions under the employment of Stillman as agent
for Simpson & Co., the judgment in the case in the
United States court referred to judicially established
the fact that said commissions for which the judgment
was rendered, were earned under a direct agency be-
tween said Simpson & Co. and said Wefel, and not oth-
erwise.

"(13) Because it is legally impossible for the said
United States Circuit Court for the Northern District of
Florida to render a judgment in favor of Wefel against
said parties doing business as Simpson & Co. for com-

missions for sale of land, except upon a contract between said Wefel and said Simpson & Co., and, if such a contract existed, the recovery must have been in pursuance thereof, and not pursuant to any agreement with said Stillman."

"(21) Because said count does not show that the relationship between plaintiff and defendant was either that of joint agents each with the other, or partners, or otherwise, entitling Stillman to share in the fruits of said agency, or that said relationship was assented to by said Simpson & Co., the principal.

"(22) Because as a matter of law no valid and binding agreement could have been made by plaintiff, Stillman, and defendant, Wefel, under which they could be jointly interested in a right of action against Simpson & Co., without the contractual consent of said Simpson & Co., which consent is not alleged; the only right of action alleged being one vested solely in Wefel, on which judgment was obtained.

"(23) Because said count does not show that said Stillman's agency was exclusive, and that the agency of said Wefel, pursuant to which judgment was obtained in the United States court, was subordinate thereto."

The defendant filed the following pleas:

(1) General issue.

"(2) This defendant denies each and every allegation contained in the first count of the complaint, and says that the plaintiff ought not to recover anything in this action; but, if the defendant is mistaken in the facts, this defendant further avers that Stillman, the plaintiff, is estopped to recover anything on account of the following facts: That the demand here sued on is to recover a part of a certain commission paid by Simpson & Co., of Bagdad, Fla., who were formerly the owners of a large lot of lands and other property, to this defendant,

Wefel, for finding and introducing to their attention a purchaser for said property. That while the defendant, Wefel, was engaged in performing the task incumbent upon him under such undertaking, a compensation for which he recovered a judgment in the United States Circuit Court for the Northern District of Florida, and after this defendant, Wefel, had attempted to sell said property to one Thomas R. Lyon, of Chicago, and after this defendant, Wefel, had introduced to the attention of said Simpson & Co., the owners of the said lands, the name of the said Lyons as a probable purchaser, and before this defendant's efforts in that behalf had ceased, said Stillman did assert to said Simpson & Co. that said agents of said Lyons then examining said property were customers of said Stillman and associate, or subagent, one Saunder, and did procure from said Simpson & Co. an agreement that, if said property was sold by Simpson & Co. to said prospective purchaser or purchasers, the said Simpson & Co. would pay to said Stillman a commission of $25,000; and thereafter said trade was consummated, and said Simpson & Co. caused to be made a conveyance of said property to said Lyon, whereupon said Stillman, representing that he and his subagent, Saunders, were the procuring cause of said sale, did claim said commission of $25,000, and that thereupon, to-wit, May 1, 1903, received from Simpson & Co. said commission of $25,000. That prior to the payment of said commission said Stillman did give to said Saunders, under date of September 8, 1902, a letter, signed J. E. Stillman & Co., embracing an order on Simpson & Co. for the payment of one-half of the 'commission that will be due us on the sale, under an agreement we have with Simpson & Co., of Bagdad, Fla.,' and that said $25,000 was paid to said Stillman as follows: One half to Saunders on the order of J. E. Stillman, and the

other half to Stillman in person. That thereupon said
Stillman gave to Simpson & Co. a receipt, under date of
May 1, 1903, signed 'J. E. Stillman & Co., per J. E. Still-
man,' containing the following guaranty: 'And we
hereby guaranty that there will be no other claims pre-
sented to them for commissions on this sale by any per-
sons claiming of Saunders, for which we have given him
an order.' And this defendant further avers that, by
reason of the representations of the said Stillman that
he (Stillman), together with this subagent, Saunders,
were the procuring cause of the said sale, said Simpson
& Co. did refuse to pay this defendant, Wefel, any com-
missions on said sale. Wherefore it became necessary
for this defendant to employ counsel to enter suit
against said Simpson & Co., and to incur large expense
for compensation of said counsel, and for traveling ex-
penses, transcripts, or documents, printing briefs, and
the like, and this defendant was put to great trouble,
annoyance, and delay, and the collection of said claim
was rendered very uncertain. And this defendant avers,
further, that the fact of the pendancy of said litigation,
and the necessity for this defendant to incur large ex-
penses and go to much trouble, was well known to said
Stillman, and the said Saunders was called as a witness
by said Simpson & Co. during the trial of said suit by
this defendant, Wefel, against said Simpson & Co.; that
the testimony of said Saunders tended to establish that
he and said Stillman were the procuring cause of said
sale; that the fact that said Saunders testified in said
cause was likewise well known to said Stillman, and
that said Stillman has never offered to this defendant,
Wefel, any part or division of said commission of $25,-
000 so received by him. And this defendant further avers
that said deed from the members of Simpson & Co. to
said Thomas R. Lyon was executed on, to-wit, the 24th

day of April, 1903, and the consideration paid thereon on said day; that on April 22, 1903, this defendant, Wefel, wrote a letter to said Stillman, who was either a member of or doing business as J. E. Stillman & Co., asking if the deal for the Simpson & Co. property had been as yet fully consummated, meaning thereby the proposed sale of said property above referred to; that on April 24, 1903, said John E. Stillman replied by letter to said Wefel, saying that 'the Simpson tract purchase has not yet been fully consummated, but understand it will be definitely settled one way or the other within the next ten days or so.' And this defendant avers that, to-wit, seven days thereafter, said John E. Stillman received in person one half of said commissions of $25,000 above referred to, and the other half was paid to said Saunders on Stillman's order; that on the 25th of April, 1903, this defendant again wrote to said Stillman, asking who the purchasers of said property were under the trade then under discussion, and particularly who are the parties furnishing the money to buy the tract; that thereafter, on May 11, 1903, said Stillman replied to said Wefel, among other things, as follows: 'I am not informed of source of funds of the purchaser of Simpson & Co. Sterns, Culver & Co. are, I understand, the buyers. They are Michigan people, and are reported to be well fixed.' But he utterly failed to mention the fact that ten days before that time he had been paid by said Simpson & Co. a large cash commission on that identical sale. Defendant avers that said letter of May 11th was written after said property had been deeded by said Simpson & Co. to Thomas R. Lyon, and ten days after said Stillman had received a large commission based upon the claim that he was the procuring cause of said sale, and after he had given his written guaranty that there would be no other claims

presented for commissions on said sale, except said claim of Saunders. Wherefore this defendant says that, even if any contract between plaintiff, Stillman, and the defendant, Wefel, existed whereby they were partners, or joint agents, or otherwise so related to each other as to give said Stillman a right to share in said commission so paid to said Wefel, said Stillman has by his acts of unfaithfulness above alleged repudiated such relationship and estopped himself from making any claim to any part of said commission.

"(3) And for further answer to said first count this defendant says that while this defendant, Wefel, was engaged in endeavoring to perform the service for which he ultimately received a commission, which commission was not received until after he had entered suit against said Simpson & Co. in the United States Circuit Court for the Northern District of Florida and recovered judgment therefor, and while the prospective purchaser or purchasers were negotiating with Simpson & Co., the owners of said property, for the purchase thereof, and before such prospective purchaser or purchasers consummated any trade therefor, said Stillman was also a broker engaged in the business of selling real estate on commission, as was this defendant, Wefel, and that during said time said Stillman did work in open and active opposition to this defendant, Wefel, in his endeavors to effect a sale of said property, and did attempt to make a sale or sales thereof to other or third parties, in whom and in whose trade this defendant, Wefel, was not interested either upon commission or otherwise, and during said time said Stillman did in the manner indicated work in open and active hostility to this defendant, with a view of making a trade with such third party and having the commission therefor for his own, to the exclusion of this defendant, Wefel. Wherefore this defend-

17 R

ant says that said Stillman is estopped from claiming
that he was in any manner jointly interested with this
defendant, Wefel, in his services as such agent, or in the
fruits thereof, and that he ought not to recover in this
action.

"(4) While denying any liability on account of com-
missions, the defendant alleges that he received, as a
result of said suit against Simpson & Co., $19,954.15 as
principal and interest, and that he had to deduct there-
from a 25 per cent. attorney's fee, which was a reason-
able fee under the circumstances, and which was a lien
upon the judgment and a diminution of the value there-
of, and if Stillman is entitled to anything, which is de-
nied, he is only entitled to one-third of the net sum of
said judgment; and, in the event he is entitled to that
as a further defense to the action, the defendant says
that Stillman was indebted to him in the sum of $19,-
077.78, due for money received by said Stillman to the
use of this defendant on the 1st day of May, 1903, which
sum constitutes two-thirds of the amount of money re-
ceived by Stillman on said day from said Simpson & Co.
as a commission for making the identical sale which
was made, and for the making of which the judgment
obtained by this defendant against Simpson & Co. was
obtained." The allegation is made that this money was
received in the state of Florida, and the legal rate of
interest in that state is set out, and this the defendant
offers to set off against the claim of Stillman, and
claims judgment for the excess.

Plea 5, set up a similar state of facts to that set up in
the second and fourth pleas, and seeks as a diminution
of the amount claimed by Stillman the cost and expense
of procuring the judgment and the attorney's fee inci-
dent thereto, which is alleged to be 25 per cent. of the
judgment, and $1,000 additional expense, and it is

sought to reduce or mitigate by proper proportion the judgment sought to be obtained.

The sixth plea is that the plaintiff, John E. Stillman, is not the party really interested in the recovery of the demand sued on.

The seventh plea alleges that the plaintiff, John E. Stillman, is not the party really interested in the re-covery of the demand sued on, for the reason that, when he receipted Simpson & Co. for the commissions paid him, he contracted with said Simpson & Co. to hold him harmless against commission or claim for commission by any person or persons claiming by, through, or under said Stillman, except one Saunders; and it is alleged in effect that this suit is instituted to recover part of the commission paid this defendant by said Simpson & Co., that it may be repaid to said Simpson & Co., under the contracts of guaranty.

Plea 8 is an elaboration of plea 2, and plea 9 is an elaboration of plea 4.

The evidence tended to support for the plaintiff his theory that he was entitled to share in the commissions recovered by said Wefel, and the evidence for the de-fendant tended to support the theory of the defendant as set out in the pleas, and also a want of contractual relation between the two.

The following charge was given at the request of the plaintiff:

"(7) The court charges the jury that a number of defenses were set up by the defendant in its several pleas, but the court has ruled that they are not avail-able. The only defenses before you are a denial of the facts stated in the complaint; that the plaintiff is not the real party interested in the suit; that, if plaintiff is entitled to recover, still there should be a deduction of reasonable attorney's fees from the amount collected:

and that only the balance should be divided. The jury has nothing to do with any other pleas or defenses, and should not take them into consideration in making up their verdict."

A number of other charges were given, but we deem it unnecessary to set them out.

The following charge was refused to the defendant:

"(10) If the jury believe from the evidence that the only contract made between plaintiff and defendant for a division of commissions earned in a sale of the Simpson lands was limited to the sale attempted to be made to Hepburn and associates, they must find their verdict for the defendant."

WILLIAM C. FITTS, and A. S. VANDEGRAAFF, for appellant.

GREGORY L. & H. T. SMITH, for appellee.

TYSON, C. J.—This is an action of assumpsit by appellee against appellant. There are three counts in the complaint. The first and third are on an express contract; the second, for money had and received. The first and third, being only different as to the amount claimed, may be treated as one. As to the first count it is alleged that the plaintiff below had been authorized to sell certain lands (by Simpson & Co., the owners) on commission, "and it was agreed between the plaintiff and the defendant that, if the defendant would find a purchaser for said lands, he and the plaintiff would divide equally the commissions," and then it is averred that the commissions recovered by the defendant in a certain suit by him against Simpson & Co., "were earned under and pursuant to said agreement," and that defendant had failed and refused to pay the plaintiff his share or any part thereof. There was a demurrer on various

[Wefel v. Stillman.]

grounds to this and the third count, all of which were overruled. We think that some of them should have been sustained. The rule of pleading is that the plaintiff must state directly, and not by inference, such facts as, being true, will entitle him to relief, and he must show a sufficient consideration for every promise or undertaking sued on, except when relieved therefrom by statute. Here the plaintiff says Simpson & Co. authorized him to sell their lands for a commission, and that he and defendant agreed that if the latter would find a purchaser the commission should be divided equally; that the defendant recovered and collected a judgment against Simpson & Co. "for commissions to defendant as agent or broker in connection with the sale of certain real estate, which said commissions were earned under and pursuant to said agreement." Of course, construing what is said with some indulgence to the pleader, and to accomplish the end in view of charging the defendant, we can understand what was intended; but pleadings, whether at law or in equity, are not to be supported on a direct attack in that way.—*Bliss v. Anderson*, 31 Ala. 612, 70 Am. Dec. 511; *Cockrell v. Gurley*, 26 Ala. 405. The complaint does not aver with sufficient clearness the employment by the plaintiff of defendant, and his acceptance and performance of service under such employment, whereby commissions were earned and paid to him. The defendant might have agreed with plaintiff, as alleged, that if he (defendant) found a purchaser he would give plaintiff half his commissions; but what consideration was there to defendant for such promise? This agreement would not put the defendant in any relation with the owner of the land, so as to give him any right to earn or claim and recover commissions from the owner; nor would it bind the defendant to do or undertake to do anything towards finding a purchaser for

the land. And if he went forward and found a pur-
chaser it would under such agreement be as plaintiff's
agent or subbroker, entitling the plaintiff to turn over
the purchaser as found by him, and to claim the com-
missions from the owner, leaving the defendant to claim
compensation only from the plaintiff. The averment,
then, in the complaint, that the judgment recovered by
defendant against the owner "for commissions as agent
or broker in connection with the sale of certain lands"
(meaning the plaintiff was authorized to sell) was
earned under and pursuant to the agreement set out, is
a conclusion of the pleader, which should have been con-
firmed by the averment of facts, such as are set out in
the first charge asked by the plaintiff, directly connect-
ing the services for which the judgment was recovered
with the agreement between defendant and plaintiff.
Unless the defendant accepted employment as a broker
from the owner under some such terms, or unless facts
were alleged restricting him from direct employment by
the owner, there would be no necessary connection be-
tween the agreement alleged and the service rendered to
the owner, entitling the plaintiff to share in the commis-
sions recovered, since the defendant, notwithstanding
said agreement, could have been employed directly as a
principal broker by the owner, as he certainly must
have been; otherwise, he could not have recovered judg-
ment against the owner in his own name. Under these
views, we think the grounds of demurrer Nos. 10, 12, 13,
21, 22, and 23 should have been sustained.

The defendant filed a number of pleas, nearly all of
which were stricken on motion of the plaintiff. We
think there was error of the court in this regard. The
power to strike pleadings, though found in Code 1896,
§ 3286, is one inherent in the very constitution of a
court as an implied power for the proper discharge of

[Wefel v. Stillman.]

its function of administering justice.—1 Tidd's Prac. 616, 617. Irrelevant and frivolous pleadings are such as are undeserving of the attention of the court, and are properly disposed of by striking them out; but prolixity is a very indefinite term, referring necessarily to the varying standard of composition approved by the presiding judge.- It is consequently a severe remedy to strike a pleading for this cause, and this should not be resorted to except in extreme and palpable cases. In cases of any doubt, the better and more liberal practice is to have the pleading corrected, so as to bring it to a correct standard of conciseness and brevity.—1 Tidd's Prac. supra. In this case this shorthand disposition of pleadings was used, contrary to the spirit of our practice and the decisions of this court. None of the pleas were open to the remedy of being stricken for unnecessary prolixity. When general demurrers were abolished, and special objections to pleadings were required, it was with the view of apprising the adversary of supposed faults, so that the matter could be corrected by amendment. To extend the practice of striking to cases in which the defect might be remedied by amendment would defeat the whole purpose of the statute of amendments, and of the abolition of general demurrers, and would work injustice by striking pleadings easily corrected by amendment.—*Sledge v. Swift,* 53 Ala. 114; *Brooks v. Continental Ins. Co.,* 125 Ala. 618, 29 South. 13; *Powell v. Crawford,* 110 Ala. 294, 18 South. 302; *Lindsey v. Morris,* 100 Ala. 550, 13 South. 619.

The rule laid down in the *Case of Brooks, supra,* seems to be correct, and that is "that when a pleading, though not frivolous, unnecessarily prolix, or irrelevant, is supposed to be substantially defective, as when the facts alleged do not constitute a cause of action or defense, the objection must be raised by demurrer." Ap-

plying this rule, we take up the pleas to the first count; the pleas to the others being substantially the same as those to the first. The second plea first denies all the allegations of the complaint, and then says, if mistaken in this, the plaintiff is estopped to claim anything, and then undertakes to set up the facts supposed to constitute the estoppel. The motion to strike is on two grounds: First, that the plea is unnecessarily prolix; and, second, that it is irrelevant, because it undertakes to set up an estoppel, which is not the subject-matter of defense at law.

To the first ground we do not think it is obnoxious. It is a double plea, and altogether covers less than three pages. All the facts are stated in direct and appropriate language, and have a tendency to throw light on the question of estoppel.

As to the second objection, the plea cannot be said to be irrelevant. It contains a formal plea of the general issue, which we admit might have been stricken, on motion directed to it alone, as unnecessary, because there was another plea of the general issue.—*Corpening v. Worthington,* 99 Ala. 541, 12 South. 426; *Kennon v. W. U. T. Co.,* 92 Ala. 399, 9 South. 200; *Daughterty v. A. U. T. Co.,* 75 Ala. 168, 51 Am. Rep. 435. But the plea was not irrelevant as to that defense, nor as to the estoppel. We do not say that the estoppel was completely made out by the averments, for we are not called upon to decide that matter. But we say the character of the estoppel sought to be set up was not one available only in a court of equity. The only estoppels which are available in equity, and not in law, are such as depend on titles and relations not cognizable at law. Thus the law, looking only at the legal title, does not recognize the rights of cestuis que trust, and will not allow the legal title to land to be overcome by matters in parol.

[Wefel v. Stillman.]

But the use of estoppels in pais from conduct is perhaps as broad at law as it is in equity, when they refer to the mere legal rights of parties. The action of assumpsit, whether in the common form for money had and received, or by special count on the facts making the defendant a debtor by express or implied promise, is essentially an equitable action, and any conduct on the part of the plaintiff towards the defendant, making it unjust and inequitable to permit the claim to prevail, is a perfect defense at law, as much so as in equity. Parties can no more at law than in equity occupy inconsistent positions. "Generally speaking, estoppels in pais are available as well at law as in equity. This is true even of the so-called equitable estoppel. Indeed, it has been laid down that the estoppel is not available as such in equity, but that there must be some equity apart from the estoppel to give a court of equity the right to entertain it."—Big. on Estop. (5th Ed.) 557, 575, 712; *Drexel v. Berney*, 122 U. S. 241, 7 Sup. Ct. 1200, 30 L. Ed. 1219; *Jones v. Peebles*, 130 Ala. 273, 30 South. 564; *Hill v. Huckabee*, 70 Ala. 183; *Bank v. Leland*, 122 Ala. 289, 25 South. 195; *Duchess of Kingston's Case*, 1 Smith's Leading Cases, 805 et seq. "The doctrine (of estoppel in pais) originated in chancery, but it is now adopted by the courts at law. It is accordingly established that, when an act or statement cannot be withdrawn without a breach of faith on the one hand and injury on the other, it will rise from the rank of evidence to that of an estoppel, and bind the jury in opposition to the clearest evidence."—1 Smith's Leading Cases, supra, 859.

In this case the necessary basis of the plaintiff's right to recover is that there was a privy of contract between him and the defendant under and by which the defendant stood as his employe to perform services. The de-

fendant was thus necessarily a subagent for the plaintiff, and this fact is assumed as a predicate for recovery in the first charge asked by the plaintiff. In other words, the plaintiff claims that the defendant accepted service as a subagent under him, and that if he contracted with the owner of the land it was in pursuance of that agreement, notwithstanding the defendant became an apparent principal towards the owner of the land. Assuming that all this was satisfactorily proved, the question is: Could not the defendant well say, in bar of the claim, that the plaintiff himself threw off the privity between them and renounced the contract, putting the defendant to the necessary costs and danger of litigation with the owner of the land, and that he accepted him at his word?—*Roehm v. Horst,* 178 U. S. 1-9, 20 Sup. Ct. 780, 44 L. Ed. 953; *The Eliza Lines,* 199 U. S. 119, 26 Sup. Ct. 8, 50 L. Ed. 115; *Sheffield Furnace Co. v. Hull Coal & Coke Co.,* 101 Ala. 446, 14 South. 672; *Bedford & Cambridge R. Co. v. Stanley,* 2 Johns. & H. 746-763. This was the defense the defendant was attempting to set up in his plea No. 2, and we have no hesitation in saying that he had a perfect right to have the sufficiency of the plea tested on demurrer.

As to the third plea, we think it was irrelevant and properly stricken, since there is nothing in the case indicating that the plaintiff did not have the right to find a purchaser himself; but, on the principles we have noticed, we think as to pleas 4, 5, 8, and 9 the plaintiff should have been put to his demurrer.

Plea No. 7 alleged that the plaintiff was not the party really interested in the suit. The court sustained the demurrer to this, upon the idea, we suppose, that the facts stated in the plea limited the defendant to the proof of those facts to sustain the plea, which, we think would not be the case, and therefore the demurrer was improp-

erly sustained. But, as there was another plea of this kind in the record, there would be no reversal for this error, as it was without injury to the defendant.

There were during the trial a great number of offers and rejections of evidence, and many charges given and refused, to which exceptions were duly reserved. We think it unnecessary to notice them all in detail; but we will notice some of them, and announce the principles upon which they all may be disposed of.

The court very properly gave, at the request of the plaintiff, charge No. 7, which defines with precision the only issues left in the case, the leading one of which was a denial of the facts stated in the complaint. Either party on this question would have a right to introduce any legitimate proof tending to establish or disprove the truth of the allegations. It was a matter of importance, but perhaps not at all controlling, to know whether or not the agency of the plaintiff in the sale of the land was exclusive. The plaintiff himself had testified, and also the owner, that it was exclusive. On cross-examination of the plaintiff, the defendant asked the plaintiff if he did not know, at the very time spoken of, the owner had other agencies to sell the land. It seems that this was clearly a legitimate question. Again, the plaintiff and the owner were permitted by the court to state what passed between them, and what passed between the owner and defendant, as to the authority given to the plaintiff and to the defendant in reference to a sale of the land; but, when the defendant was asked to give his version of what passed between him and the owner respecting the powers and authority to sell the land, the court excluded the question, which, we think, was erroneous. The plaintiff being on cross-examination, defendant as not permitted to ask him if he had collected $25,000 from the owner for commissions on the

sale of the land. This had a bearing on the issue of the plaintiff's interest in this suit. If he had been paid in full for the sale made, it might be a matter of legitimate argument as to his interest in a further recovery in this suit for the same sale. The plaintiff was asked on cross-examination whether, at the trial of the case of the defendant against the owner for his commissions, he had not told the defendant that he would give him 25 cents for his chances to win. The court refused to allow the question to be answered. When it is recollected that the theory of the plaintiff in this suit, and in his testimony given in support of that theory, is that there was a privity of contract between him and the defendant, and that the defendant's suit against the owner was an assertion of a right in which he was jointly interested with the defendant, while the defendant's theory denies all this, and asserts that he was an independent contractor on his own account with the owner, we see at once that any conduct or statements by either party inconsistent with their respective theories is entirely legitimate evidence, and we see that such a remark as this question imputed to the plaintiff might have a very important bearing. It might be argued to the jury that, if the plaintiff then felt that he was interested in the suit, he would have referred to the chances of recovery as "our chances," and he would have made the remark, if it was made, regretfully and sympathetically, and not contemptuously, if it was spoken contemptuously.

We have already referred to the right of the defendant to show, on cross-examination of the plaintiff, the payment of $25,000 of commissions to the plaintiff for the sale of the identical land, which would include the right to show the receipt for that payment. As the judgment in favor of the appellant against the owner concluded nothing between the plaintiff and defendant

in this case, the fact that the plaintiff had been paid his commissions for the sale by the owner, without explanation, might well be considered on the question whether the plaintiff had any interest in the money collected by defendant from the owner. And for the same reason the testimony of the witness Hyer, who was interested with the plaintiff on a "commission basis," as to his participation in the $25,000 commissions collected by the plaintiff, and his denial of any interest in the commissions collected by the defendant, should have been allowed to remain in evidence.

The defendant offered in evidence the correspondence between himself and the plaintiff before and after the sale, all of which was excluded by the court as irrelevant. We think this should have been admitted, as it might materially assist in determining the consistency of the past conduct of the several parties with their present positions. So we think the correspondence by letters and telegrams between the defendant and the owner respecting the authority of the defendant and the nature of his dealings with the owner was admissible, not as declarations of third persons against the plaintiff, but as facts transpiring between the owner and the defendant tending to show the authority given by the owner to the defendant and what he did thereunder. If this correspondence tends to show an independent or apparently independent dealing between the defendant and the owner, it would tend to exclude the idea that the agency of the defendant was expressly subordinate to that of the plaintiff.

We discover no error in the charges given on the request of the plaintiff.

Charge 10, refused to the defendant, should have been given. There was evidence tending to show that the defendant only contracted with the plaintiff in reference

to a sale to Hepburn; and, as that sale fell through, he had a right to the charge that there could be no recovery if the jury found that the contract was so limited.

The appellee insists that the appellant was estopped from setting up that he sold the land under an independent contract with the owner and relies on the general equitable doctrine that an agent or other fiduciary cannot acquire an interest in the subject-matter of the agency adverse to his principal, which is set out in *Walker v. Jones,* 107 Ala. 341, 18 South. 277, and in *S. U. N. Ins. Co. v. dangaix,* 103 Ala. 394, 15 South. 956, and other cases. But, while accepting that principle to its full extent, we do not think it applies here, so as to prevent the owner and the defendant from entering into an independent contract. Certainly, if the agency between defendant and plaintiff was limited to a single purchaser, the relation would be at an end when that proposed purchase fell through; and there would be no principle of law forbidding a contract of agency between the owner of the property and the defendant.— 103 Ala. 394 et seq., 15 South. 958. The plaintiff had no interest in the property. At most, he had a contract allowing him to find a purchaser for the land by his own efforts or those of his agents; and, of course, if he authorized the defendant to act under his power, and the defendant, so acting, found a purchaser, the plaintiff would be entitled to share in the commission. But such a contract is unilateral, binding upon neither party until the defendant, proceeding under the offer, had procured a purchaser.—*Sheffield F. Co. v. H. C. & C. Co.,* 101 Ala. 477, 14 South. 672.

There was a right in the owner to employ other persons than the plaintiff to sell, and a right in the defendant to contract independently with him; and if he did in fact so contract, not proceeding under the privilege

[Wefel v. Stillman.]

extended by the plaintiff, it would be a renunciation of any contract relation with the plaintiff, and any commissions earned would belong to the defendant, and the plaintiff, would have to sue for damages, if there was such a contract as would, on its breach, support an action. We do not think the principle invoked by the appellee has any application to this case, except upon the factum of the defendant's service being rendered to the owner for the plaintiff, or in pursuance of the engagement with the plaintiff. The contract between plaintiff and defendant did not per se transfer to the plaintiff any lien or property right to defendant's labor, or put any obligation on the defendant to proceed under the offer extended to him by the plaintiff, or restrict his or the owner's right to contract as principals, so as to pass any property right to the plaintiff in the wages of defendant in a service to the owner under an independent contract. But, of course, any breach by defendant of any binding contract with the plaintiff gives to the latter a plain remedy at law for his full damages.

We think it hardly necessary to say that a party as a witness may be discredited by conduct inconsistent with his present contention or statements, or that the verdict of a jury must be unanimous on some point entitling the plaintiff to a recovery.

Reversed and remanded.

HARALSON, SIMPSON, and DENSON, JJ., concur.