# Hooper v. Herring.

### Assumpsit.

(Decided November 23, 1915. 70 South. 308.)

1. **Bills and Notes; Protest.**—Protest of a note may be made by a commercial notary at the instance of any person authorized to receive payment.

2. **Same; Demand.**—Under § 5166, Code 1907, a notary public has authority to receive a check and demand payment therefor.

3. **Banks and Banking; Cashier; Authority.**—Where a bank cashier delivered a check drawn on his bank to a notary public for the purpose of making a protest, his agency for the holder of the check was at an end.

4. **Same; Powers.**—A cashier of a bank has authority as such to refuse payment of a check so as to bind the bank, and the presentment and demand for payment is properly made upon him.

5. **Bills and Notes; Dishonor; Presentment for Payment.**—Under the provisions of §§ 89-92, 118, Acts 1909, p. 141, where a bank on which a check

[Hooper v. Herring.]

is drawn refuses payment, and its cashier delivers the check to a notary for protest, the notary was duly authorized to enter protest since the cashier could act for the payee and there was sufficient presentment for payment when presented to the cashier and by him delivered to the notary for protest, as the law does not require the doing of vain things, and the notary was not required to again present the check to the cashier for payment which had beeen once refused by the cashier.

6. **Banks and Banking; Cashier; Authority.**—Where the cashier of a bank on which a check is drawn refuses payment and secures its protest, the bank cannot dispute the authority of the notary to make the protest, nor the fact that proper presentation was made.

7. **Bills and Notes; Payment for Honor.**—Under § 171, Acts 1909, p. 153, the drawer of a check which was wrongfully dishonored by a bank is entitled to intervene and pay it to protect his honor.

8. **Banks and Banking; Refusing Checks; Damages.**—Where a bank refused to honor a check, although the drawer had on deposit sufficient funds, the fact that the check was returned to the drawer, and was in his possession, is admissible to show the drawer's damages, the action being for a wrongful dishonor.

9. **Same.**—One who gives a check to his creditor on a bank in which he has funds may recover substantial damages without proving any special injury, where the bank wrongfully dishonored the check.

10. **Evidence; Facts or Conclusions.**—Where plaintiff sold cotton to a banker who agreed to credit him on his books for the amount of the purchase price, and on faith of such credit plaintiff drew checks, one of which was dishonored, and plaintiff instituted suit for damages for dishonoring the check, the check being less than the credit, and the banker set up that the cotton was defective in quality, and less in amount than agreed upon, the testimony of plaintiff that he sold the cotton at .08-5/8 in round lots was not inadmissible as a conclusion of the witness.

11. **Same; Relevancy; Collateral Facts.**—Where defendant showed that the cotton, when weighed by his consignee, was much less than the weights furnished by plaintiff, evidence that plaintiff had the cotton weighed at a warehouse in which defendant was a stockholder, was not admissible, the fact of defendant holding stock in the warehouse company being a collateral fact tending to prejudice him in the minds of the jury.

12. **Banks and Banking; Checks; Dishonor; Effect.**—Where a banker failed or refused to honor a check drawn by a depositor who has sufficient funds there, and no other good excuse exists, the depositor may maintain an action against the bank for the money, and is entitled to recover substantial damages.

13. **Same; Defenses.**—Where a banker gave plaintiff a credit on his books for the purchase price of cotton, but the cotton proved inferior in quality, and deficient in quantity, and the banker reduced the credit because thereof, that fact is a good defense to an action for non payment of checks drawn on that credit.

14. **Charge of Court; Ignoring Defenses.**—General instructions which ignore defenses are erroneous.

15. **Banks and Banking; Checks; Non Payment; Action.**—The presentation of checks to a banker, and his refusal to pay is sufficient to authorize an action for unwarranted dishonor.

[Hooper v. Herring.]

16. **Charge of Court; Directing Verdict.**—Where a banker offered a defense to justify the non payment of a check, and this defense was controverted, it was proper to refuse affirmative instructions for the banker.

17. **Sales; Performance; Acceptance.**—Where plaintiff sold white cotton, a delivery of blue cotton is not a compliance with the contract, but if it is accepted, the buyer is liable for the reasonable market price for blue cotton, unless he expressly agrees to pay the price of white cotton, and accepted blue cotton in lieu thereof.

18. **Same; Instructions.**—Where a sale of cotton was involved, a charge that if defendant agreed to purchase from plaintiff, cotton which plaintiff did not have on hand, that was not an agreement to accept any cotton plaintiff might see fit to deliver, was argumentative and properly refused.

19. **Charge of Court; Abstract.**—A charge predicated upon a hypothesis having no basis in the evidence is abstract.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Assumpsit by R. E. Herring against John F. Hooper. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The action is stated in four counts, the substance of which are that John F. Hooper is a banker in the town of Albertville, and that plaintiff was a merchant and trader doing business in said town, and had in said bank a general deposit subject to check, for more than sufficient to pay the check herein mentioned; that on April 6, 1912, Herring drew a check on said Hooper, banker, payable to the Boaz Fertilizer Company, a creditor of plaintiff, in the sum of $200. Said check was properly indorsed and presented, and payment thereon refused, and that the same was protested, and that said Hooper, banker, had in his hands on that day, and since has had in his hands as a banker, money of plaintiff more than sufficient to pay said check; and that he wrongfully refused to pay said check, but caused same to be protested and dishonored, to the serious, injury, wrong, and damage of plaintiff. There are counts for money had and received also. The defense was that plaintiff had sold cotton to defendant and warranted the cotton to be of a certain quality, quantity, and weight; and that defendant had given plaintiff credit on his bank books for the agreed price of the cotton on the warranty of plaintiff, thus creating the alleged deposit, and that when the cotton was delivered, it was not equal in weight, quality, or quantity to that sold; and that the difference in the agreed price of the cotton contracted for and that delivered was a large amount, to-wit, $3,000; and that defendant thereupon, and before the presenta-

tion of the check, charged back to plaintiff's account the difference plaintiff was indebted to defendant for and on account of said cotton transaction; and that at the time the check was drawn, plaintiff knew that defendant was in good faith denying that plaintiff had to his credit and subject to check as much as $200 in defendant's bank; and that plaintiff knew, when he drew said check and delivered it to the Boaz Fertilizer Company, that it would be refused payment, and would be protested for nonpayment. The facts otherwise sufficiently appear from the opinion. The following is charge A, given for plaintiff:

The court charges the jury that if they find from a consideration of the evidence in this case that Herring was a trader or merchant doing business on a credit, and buying on time, and that he had money on deposit at Hooper's bank at the time the check of the Boaz Fertilizer Company was presented, and that the money on deposit after just demands was more than or equal to the amount of said check, and the check was presented to Hooper's bank and payment refused, then Herring is entitled to a judgment for substantial damages against Hooper.

(B) The court charges the jury that a banker who refuses to cash a check drawn by a depositor engaged in trade, who has sufficient funds on deposit to meet the check, is liable therefor in substantial damages, even though the refusal was caused by a mistake, and there is no evidence of special damages, or actual malice.

The following charges were refused to defendant: (2) Under no aspect of this case could defendant recover more than nominal damages under the third count.

(5) Same as 2 as to the fourth count.

(10) The court charges the jury that if you find from the testimony, to your reasonable satisfaction in this case, that plaintiff agreed to sell white cotton, and instead of complying with that agreement he placed in the lot an inferior grade of cotton, and that such inferior grade was worth less than the amount agreed to be paid for white cotton, and you find to your reasonable satisfaction that the deductions made are reasonable, you should not find for plaintiff.

(12) If plaintiff agreed to sell cotton to Hooper at an agreed price, and if nothing was said as to the character of the cotton, the law implies that the cotton contracted for should be that grade of undamaged cotton usually grown in the seller's neighborhood and gathered at that time.

[Hooper v. Herring.]

(11) If defendant agreed to purchase cotton from plaintiff, which plaintiff did not have on hand, this was not an agreement by defendant that he would take just any sort of cotton that Herring might see fit to deliver.

(13) If Herring sold the cotton to Hooper on a white-cotton basis at agreed prices, this means that Herring had the right to put in any grade of white cotton, even the lowest grade of white cotton at the agreed price, and he might also put in on the contract blue or tinged cotton, but if Herring did this, he would be under the duty to deduct a reasonable amount from the contract price for each blue or tinged bale put in, and if Herring without grading the cotton shipped it to McFadden Bros., this authorized McFadden Bros., without any express agreement, to grade the cotton, and this they would have a right to do without Herring being present, unless Herring requested to be present.

The third count is the count set out above.

The fifth plea is the plea setting up that Herring knew that the bank or banker was in good faith denying that he had this money on deposit at the time he drew the check and delivered it to the Boaz Fertilizer Company, and that he knew that the check would be protested if presented.

STREET, ISBELL & BRADFORD, for appellant.    JOHN A. LUSK & SON, and A. E. HAWKINS, for appellee.

BROWN, J.—(1-5) The statute provides, when a negotiable instrument is dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged. "The notice may be given by or on behalf of the holder or by or on behalf of any party to the instrument who might be compelled to pay it to the holder, and who, upon taking it up, would have a right to reimbursement from the party to whom the notice is given," and the notice may be given by an agent in his own name or the name of any party entitled to give the notice, whether that party is the agent's principal or not; and the notice, when so given, inures to the benefit of all subsequent holders or prior parties who have a right of recourse against the party to whom it is given.—Acts Special Session 1909, p. 141, §§ 89-92.

While protest of such instrument, except in the case of foreign bills of exchange, is not essential to avoid a discharge of

persons secondarily liable—notice of dishonor being sufficient to that end—yet protest may be made thereof, and serves all the purposes of notice of dishonor given under the statute.—Acts Special Session 1909, § 118. Protest may be made by a commercial notary at the instance of any person authorized to receive payment.—7 Cyc. 1054 (XII, B, 3, a [H]) ; Chitty on Bills, p. 373 ; Edward on Bills & Notes, p. 833 ; 5 Cyc. 509, note 95. The evidence shows without dispute that protest of the check was made by the notary at the instance of A. B. Hooper, cashier of the defendant's bank, who had the check in his possession at the time, and delivered it to the notary with the request that he protest it; and the evidence further shows that the notary received the check from said Hooper and made protest thereof, giving notice of its dishonor and protest to the drawer and all indorsers, and made proper certificates under his hand and official seal, to the effect that said check had been delivered to him by J. F. Hooper, banker, requiring that said check be presented and payment thereof demanded, and, in case of refusal of payment, that protest thereof be made, and "whereupon, at the request of aforesaid, I, the said notary, did present said check to said J. F. Hooper, banker, who refused payment for reason of insufficient funds."

The notary had authority to receive said check and demand payment thereof (Code 1907, § 5166), and the fact that the check was in the possession of A. B. Hooper was evidence of his agency of the holder to present it for protest.—*Eason v. Isbell,* 42 Ala. 456 ; 7 Cyc. 1003 (X, F, 1), 1004 X, F, 2). After Hooper delivered the check to the notary for the purpose of making protest, his agency for the holder of the check was at an end. The undisputed evidence shows that said Hooper was the cashier of the bank, and as such had authority to refuse payment of the check so as to bind the banker, and presentment and demand for payment was properly made to him by the notary.—*Crenshaw v. McKiernan, Minor,* 295 ; 7 Cyc. 1001 (X, E, 2). The fact that the check was in the possession of the cashier of the bank on which it was drawn was evidence that it was received and presented for payment in due course, and no further formal demand for payment was necessary.—7 Cyc. 996 (K. D, 3). It is elementary that the law does not require a useless thing, and in the face of the evidence in this case that the bank had received the check in due course of business, as the jury had a right to find,

and that the cashier of the bank had delivered it to the notary for protest for non-payment, further presentation and demand would be a useless form, and was wholly unnecessary.

(6) Another principle operates to cut the defendant off from disputing the fact of proper presentation and demand for payment, followed by dishonor. It is not disputed that A. B. Hooper, acting as cashier and agent of the banker, delivered the check to the notary public to be protested, and that the protest thereof was made and notice given at the instance of the defendant, on the assumption that the check had been properly presented and payment thereof refused. This being true, the banker, when being sued on the belief that the protest of the check was proper, is in no position to dispute the authority or jurisdiction of the notary to make the protest, give the necessary notice, and certify to these facts under his hand and official seal, when the rights of third parties who have been led to accept the protest as proper and act thereon have intervened.—*Thygh v. Dolan*, 95 Ala. 269, 10 South. 837; *Wefel v. Stillman*, 151 Ala. 249, 44 South. 203; Herman on Estoppel, § 469.

(7, 9) The certificate of the notary under seal, accompanying the check, and the notices were properly admitted in evidence as showing demand on the defendant for payment and dishonor of the check. The check having been dishonored and protested, the drawer, the plaintiff in this case, had the right to intervene and pay it to protect his honor (Acts Special Session 1909, § 171), and the fact that the check had been returned to him through other channels than the bank had a tendency to show that he had so protected the check. The fact that the check was returned to the drawer by the person in whose favor it was drawn was admissible as tending to show that the plaintiff had suffered some damage.

"A trader who gives a check to his creditor upon a bank at which he has funds is almost necessarily injured in his credit by the dishonor of the check, for it is a slur upon it of a similar character to that which is caused by the utterance of slander throwing doubt upon his solvency. In both cases he is allowed to recover substantial damages without proving any special damages."—*Henderson v. Bank of Hamilton*, 25 Ont. Rep. 643; *Atlantic National Bank v. Davis*, 96 Ga. 334, 23 S. E. 190, 51 Am. St. Rep. 139; *Schaffner v. Ehrman*, 139 Ill. 109, 28 N. E. 917, 15 L. R. A. 134, 32 Am. Rep. 192; 5 Cyc. 535 (C).

(10) We are not able to say that the statement of the witness Herring, "I sold it to him at 8⅝ in round lots," was a statement of a conclusion of the witness. The question to which this answer was responsive clearly called for a pertinent fact—the terms of the sale—and, for all that appears from the record, the terms "in round lots" may have a definite meaning in the parlance of cotton dealers, which proper cross-examination would have disclosed. The motion to exclude this statement was properly overruled.

(11) One question of fact in the case was as to the correctness of weights of the cotton in controversy. The first weights appear to have been procured by the plaintiff at the Albertville warehouse and furnished by him to the defendant as a basis for the deposits entered to plaintiff's credit on the books of the bank. There was a discrepancy between these weights and the weights furnished by McFadden Bros., of Birmingham, to whom the cotton was sold by defendant. Taking these discrepancies in the weights of the cotton as a basis, the memorandum charges on plaintiff's account on the books of the bank were made by the defendant. The justness and correctness of these charges is the litigated fact in this case. It appears that the Albertville warehouse belonged to a corporation styled in the record "The Warehouse Company;" that the warehouse was not run by the company, but was run under lease by certain merchants of the town, and was managed by one Wallace for them. The court, over the objection of the defendant seasonably made, allowed the plaintiff to show by the witness A. B. Hooper that the defendant was a stockholder in the warehouse company, owning one-fourth of the stock of the corporation. This was a collateral fact, having no connection with the question at issue and no legitimate tendency to shed light thereon; yet it was calculated to prejudice the defendant in the minds of the jury. In admitting this evidence, the court committed reversible error.—*Orr v. Stewart*, 13 Ala. App. 542, 69 South. 649; *Dothan Grocery Co. v. White Bros., infra*, 69 South. 992.

(12-14) Charge A given at the request of the plaintiff does not deal with the burden or measure of proof, but with the substantive law of the case and the measure of damages, and is not subject to the criticism offered in appellant's brief. The rule of liability sustained by the weight of authority is thus stated: "If the bank neglects or refuses to pay on the order of a depositor

when the latter has sufficient funds on deposit and no other good excuse exists, the depositor can maintain an action against the bank for the money, and is entitled to recover substantial damages for such refusal."—5 Cyc. 535 (II, E, 10, a, [VII], [C], [1]).

This charge ignores the contention of the defendant that the weights of the cotton furnished by the plaintiff, on the basis of which credit was given on the books of the bank, were erroneous, and that the grade of some of the cotton was inferior to that which the plaintiff sold the defendant, and should have been refused. The evidence shows that when cotton was purchased by the defendant from the plaintiff, no check or cash was given in payment, but defendant merely entered a credit on the books of the bank for the proceeds as based on weights furnished by the plaintiff; and defendant adduced evidence tending to show that plaintiff agreed and authorized the defendant to charge back any difference in the price of the cotton resulting from discrepancy between the Birmingham weights and weights furnished by plaintiff. If the defendant's contention that the weights furnished by the plaintiff were erroneous was sustained by the evidence, the amounts entered to the credit of the plaintiff were in excess of that to which he was entitled; and, although the books of the bank prima facie may have shown, aside from such charges, that there was sufficient money on deposit to meet the check, these facts afforded defendant a good excuse to refuse payment of the check, unless there was enough to pay the check, over and above the amount represented by such discrepancies.— *Birmingham National Bank v. Meyer,* 104 Ala. 641, 16 South. 520, 5 Cyc. 550. This charge also ignored the issues presented by defendant's plea 5. Charge B embodied a general principal of law applicable to this case.

(15) The presentation of the check and the refusal of the defendant to pay it was sufficient demand to authorize the action against the bank.—*Tobias v. Josiah Morris & Mo.,* 126 Ala. 535, 28 South. 517.

(16) The principles discussed above justify the refusal of the affirmative charge as to all the counts and as to the separate counts, and charges 2 and 5.

(17) If the contract between the parties contemplated the delivery of white cotton only, and the plaintiff delivered "blue cotton," it was not a compliance with the contract, and no obliga-

[Southern Woodmen v. Morris.]

tion rested on the defendant to accept "blue cotton." However, if he accepted "blue cotton," he would be liable for the reasonable market price of "blue cotton," unless he expressly agreed to pay the price of white cotton, or accepted the "blue cotton" in fulfillment of the contract.

Charges 10 and 13 were properly refused.

(18) Charge 11 was argumentative.

(19) Charge 12, if not otherwise objectionable, was abstract.

The sufficiency of the complaint was settled on the former appeal.—*Hooper v. Herring*, 9 Ala. App. 292, 63 South. 785.

We have considered all assignments of error insisted upon.

For the errors above indicated, the judgment is reversed. Reversed and remanded.