## KIMBRELL v. STATE. (8 Div. 956.)

(Court of Appeals of Alabama. June 30, 1922. Rehearing Denied Oct. 24, 1922.)

1. **Jury ⬅82(2)—Mistake in name of juror held not ground for quashing the venire.**

Under Acts 1909, p. 317, § 32, as amended by Acts 1919, p. 1040, providing that sheriff's failure to summon jurors drawn, or the failure or refusal of any juror to attend, or a mistake in the name of any juror drawn or summoned, and in view of Acts 1909, p. 317, § 29, providing that no objection can be taken to any venire, except for fraud in drawing or summoning the jurors, it was not ground for quashing the venire in a murder case that the name of Clarence Horton appeared on the venire when his name had not been drawn, and Clarence Harlan was drawn when his name was not on the list; it being immaterial whether the name of the juror was Harlan or Horton.

2. **Homicide ⬅309(3)—Failure in murder trial to charge on manslaughter not error, where no evidence of that offense.**

While generally, in murder trials, it is safer for the court to charge the jury as to all degrees of homicide, a failure to charge on manslaughter is not reversible error, where there was no evidence of that offense.

3. **Criminal law ⬅396(2)—Exclusion of defendant's version of what was said and done by arresting officer held error.**

In a prosecution for murder, where a state's witness had testified as to what was said and done by the arresting officer, at the time of defendant's arrest, it was reversible error to exclude defendant's evidence as to what the officer said on that occasion.

Appeal from Circuit Court, Lawrence County; Robert C. Brickell, Judge.

Love Kimbrell was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Certiorari denied Ex parte State, 94 South. ⸺.

⸺

Jim Elliott was killed the night of September 15, 1919. On the day before the homicide, Elliott's two stepdaughters, having been attacked and shot at by him, left his home and went to the house of the defendant. Shortly afterward the wife of Elliott, mother of the two girls, also left Elliott's house and went to the home of the defendant. On the night of the homicide Elliott's wife and the wife of defendant went to the home of one John Burt, an uncle of Elliott, about half a mile distant from the defendant's home. Shortly thereafter Elliott went to the home of defendant, and inquired if his wife was there, and was informed by defendant that she had gone to Burt's house. Elliott proceeded to Burt's house, called to John Burt, who came out and talked with him, after which Burt returned to the house and told Elliott's wife that Elliott wished to see her. She went out and talked to Elliott for a few minutes, and returned to the hallway, where she, Burt, and defendant's wife stood talking, and shortly thereafter they heard a gunshot, and heard Elliott call to Burt. According to one witness he cried, "Uncle John, somebody done shot me;" and to another, "Oh, Uncle John, come here! Love Kimbrell has shot me."

Evidence for the state showed that the road leading from defendant's house to the house of John Burt, beside which the body of Elliott was found, ran through a cotton field; that tracks were found near the place defendant was shot, close to a pine tree and signs of a horse having been ridden away, leading from near the place of the shooting to the home of the defendant, and that bloodhounds, brought the next morning, followed the trail to defendant's house; that shells were found near the scene of the crime, similar to shells found at defendant's house and in defendant's gun; and that one barrel of defendant's gun indicated that the gun had been recently shot. Elliott's two stepdaughters testified that shortly after the homicide they walked out on defendant's porch and saw defendant come up with a gun

in his hand. Allen Davidson, brother-in-law of defendant, testified that shortly before he had shot a' hawk with defendant's gun; that he and defendant were sitting on the porch when the two girls came out, and that defendant had no gun.

The wife of Elliott (the deceased) and her two daughters were arrested along with defendant. On cross-examination, one of these girls testified that .the arresting officer, Terry, told her and her sister that, if they testified that they saw defendant come up after the shooting with a gun in his hand, they and their mother would be released. Some of the witnesses for defendant testified that, following the shooting, they heard some parties ride through the field in a different direction from defendant's home, and heard .them make some remarks about trying to get through a wire fence.

Defendant moved to quash· the venire when the case was called for trial, because the name of Clarence Horton appeared upon the venire and his name had not been drawn from the jury box, and because Clarence Harlan had been drawn and his name was not on the list.

W. H. Long, of Decatur, for appellant.

On a trial for murder, instructions should distinctly set forth the law applicable to the case as made both by the prosecution and by the defendant, and the court erred in refusing the charge on manslaughter. 26 Tex. App. 274, 9 S. W. 563, 8 Am. St. Rep. 477; 29 S. C. 34, 6 S. E. 891, 13 Am. St. Rep. 706; 125 Ind. 19, 24 N. E. 756, 8 L. R. A. 604, 21 Am. St. Rep. 187; 186 Ala. 14, 65 South. 160; 201 Ala. 475, 78 South. 381. Counsel argues other questions, but without citation of additional authorities.

Harwell G. Davis, Atty. Gen., Lamar 'Field, Asst. Atty. Gen., and Callahan & Harris, of Decatur, for the State.

Where the question on its face does not necessarily show what the answer will be, the court commits no error in sustaining an objection to it, unless the offering party informs the court the tenor of the answer and shows that it is material. 75 South. 692; 17 Ala. App. 331, 84 South. 779; 49 Ala. 370; 63 Ala. 199; 73 Ala. 23; 196 Ala. 599, 72 South. 158; 1 Wig. Ev. 66. The foregoing rule applies to cases where the question is seeking to draw out all of a conversation, part of which has already been detailed. 14 Ala. App. 200, 69 South. 231; 140 Ala. 339, 37 South. 297; 139 Ala. 144, 36 South. 718; 147 Ala. 57, 42 South. 1; 160 Ala. 7, 49 South. 902; 17 Ala. App. 233, 84 South. 423; 206 Ala. 504, 90 South. 499; 17 Ala. App. 602, 88 South. 40.

BRICKEN, P. J.　This defendant was charged by indictment with the offense of murder in the first·degree, the specific charge being that he unlawfuly and with malice aforethought killed Jim Elliott ,by shooting him with a gun, etc. He was tried and convicted, the verdict of the jury being that he was guilty of murder in the second degree, and his punishment was fixed at imprisonment in the penitentiary for a term of 15 years. Judgment was entered accordingly.

[1] On the defendant's motion to· quash the venire it is immaterial whether the name of the juror in question was Harlan or Horton, as the statute expressly provides that, if the sheriff fails to summon any of the jurors drawn, or any juror summoned fail or refuse to attend the trial, or there is any mistake in the name of any juror drawn or summoned, none nor all of these grounds shall be sufficient to quash the venire or continue the cause. Acts 1919, p. 1039, § 32. See, also, Acts 1909, p. 305, § 29, wherein it is provided that no objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors:

[2] The court declined to charge the jury as to manslaughter, although specially requested so to do by defendant. From the facts as shown by the record in this ·case, there was no error in refusing to charge on manslaughter, while the general rule is, on trials for murder, it is safer for the court to charge the jury as to all degrees of homicide, a failure to do so will not work a reversal, if the evidence shows accused to be guilty of the degree as to which charge was given, if guilty at all. In other words, if there is no evidence upon which to predicate a charge of manslaughter, it is not error to refuse to charge thereon. In trials for murder it is the duty of the court to instruct the jury as to all degrees of homicide, unless there is an entire absence of all proof as to the degrees omitted. Compton v. State, 110 Ala. 24, 20 South. 119; Gafford v. State, 125 Ala. 1, 28 South. 406; Rogers v. State, 117 Ala. 9, 22 South. 666.

On the trial of this case in the court below numerous exceptions were reserved to the rulings of the court and are here insisted upon as error. We shall not attempt to discuss all of these questions, as no good purpose can be accomplished by so doing. We do state, however, that in many instances the exceptions taken appear to be without merit.

Among the .numerous witnesses examined upon this trial, one J. T. Terry, a deputy sheriff, was examined as a witness for the state. On the direct examination of this witness he testified that he went to the place where Jim Elliott's (deceased's) body was that night, and further:

"I went to Love Kimbrell's [defendant's] house on the following morning. I arrested him. I had· a conversation with him. I asked him to talk to me. I asked him where his

gun was, and he said it was in the house; and I said, 'Let's go and get it;' and we went and got it. I said, 'Love, how long has it been since your gun had been shot off;' and he said, 'My gun hasn't been shot in two months,' and he showed me the gun sitting by the corner."

After testifying further about the gun shells, etc., he was asked, "Did you ask him (Love), 'Didn't old man Rufus Blalock try to get you to go over?'" and he said he did. The defendant moved to exclude the last statement, to which the court replied, "I will sustain the objection to that." The above conversation, and other of like import, was testified to by state's witness Terry. He stated, also, that he went to defendant's home the morning following the killing, in company with J. R. Bates, another state witness, and that when he reached defendant's home he saw defendant and his brother-in-law, one Allen Davidson; that they, defendant and Davidson, were together. State witness Bates also testified as to the conversation of Terry on that occasion.

[3] When the defendant was developing his case, he undertook to prove by his witness Allen Davidson what state witness Terry had said on that occasion, but upon objection by state the court would not permit him to do so. In this there was error. The state having brought out in detail what Terry, the arresting officer, had said on the occasion in question, it was clearly the right of the defendant to give evidence of the same conversation, and the refusal of the court to allow this was error, as it violated the elementary rules of evidence bearing on this question. Not only were proper exceptions reserved in this connection, but counsel for defendant took the precaution to state to the court that "it is all a part of what they [the state] brought out."

This error necessitates a reversal of the judgment of conviction; and, as the case will in all probability be tried again, we shall refrain from dealing with other rulings of the court upon the evidence. And while it is true that the testimony of deceased's daughters, under the circumstances as shown by the record, may be of slight probative force, as contended by counsel for defendant, yet this is a matter for the jury, and we are without authority to declare what weight should be given to this evidence by the jury.

The judgment of conviction, appealed from, is reversed, and the cause remanded.

Reversed and remanded.

## On Rehearing.

The question raised by the associate counsel for the state on this rehearing is governed by the rule announced in Phœnix Insurance Co. v. Moog, 78 Ala. 284, 56 Am. Rep. 31, this rule being:

"When a question is propounded to a witness on the stand, which calls for evidence prima facie relevant and legal, the refusal of the court to allow it is an error which will work a reversal, although the answer, or proposed answer, of the witness is not stated."

See, also, Birmingham Ry. L. & P. Co. v. Barrett, 179 Ala. 274, 290, 60 South. 262.

In the instant case the principal witness for the state (Terry) had testified as to what he had said, and also as to his actions at the home of the defendant on the morning next after the alleged homicide, and the testimony is without conflict that defendant's witness, Allen Davidson, was present on that occasion, and heard what was said by Terry, and saw what was done by him. The state had gone into all that was said and done on that occasion by Terry and others, and, having done so, the defendant was entitled to inquire, by way of rebuttal, of his witness what had been said and done by Terry, and to deprive him of this opportunity was an injustice. The inquiry as to the conversation had on that particular occasion, and what was in fact done by witness Terry, was not only prima facie relevant and legal, but was vital to defendant's case in rebuttal. As before stated, it was without dispute that defendant's witness was then and there present; he was therefore competent to testify in rebuttal as to what Terry had said, and as to what he had done at that particular time and place. The general objection interposed by the state should have been overruled. We find this apt expression in the case of Mobile, J. & K. C. R. R. Co. v. Hawkins, 163 Ala. 565, 588, 51 South. 37, 44:

"Where plaintiff has given evidence as to a conversation, defendant may also give his version of it."

And further:

"A witness who is competent may testify without being specifically interrogated; and in view of the time [and place] at which this testimony was offered, and the conditions then obtaining, we cannot conceive of or presume any reason that would justify its exclusion."

See, also, Wefel v. Stillman, 151 Ala. 249, 44 South. 203.

In Perdue v. State, 17 Ala. App. 500, 86 South. 158, this court said:

"State witness Dr. Yielding on direct examination was permitted to testify what took place at defendant's home at the time of the arrest of this defendant and another by the sheriff, and also as to some conversation which occurred there at that time. On cross-examination of this witness the court sustained the state's objection to several questions propounded by defendant's counsel to this witness relative to the same matter. In these rulings there was error. It was competent for the defendant to cross-examine this witness on these matters, and the court should have permitted

this cross-examination. The same is true as to the direct examination of witness Frassie De Jarnette. She testified that 'the sheriff and Dr. Yielding came to my house that night.' Counsel for defendant thereupon propounded this question: 'State what, if anything, they did in your house.' The court sustained the state's objection to this question, and defendant duly and legally excepted. Upon what theory the objection was made and sustained we are unable to understand. The question was objected to, without stating any grounds upon which the objection was predicated. The question called for relevant and competent testimony, and the general objection should have been overruled. Witness Yielding had testified for the state what he and the sheriff did that night at the house of defendant, and certainly under all rules of evidence the defendant was entitled to rebut this testimony."

The point in question here is identical with the excerpt above quoted.

Application overruled.