# Richardson Bros. & Co. *v.* Stringfellow.

## *Attachment and Claim Suit.*

1. *Evidence of commercial rating of debtor.*—In an attachment suit in which an assignment is attacked as fraudulent, evidence of the "commercial rating" of the assignor prior to the attachment is not competent to show that he has not embraced all his property in the assignment

2. *Objection to evidence; conclusion of witness.*—Where an assignment is attacked by a creditor as fraudulent, the statement of a witness that "it seems" the assignor was in control of the business after the assignment, was properly excluded as the mere conclusion or opinion of the witness.

3. *Same.*—It was not error for the court to refuse to allow a witness to give his opinion that certain figures in pencil on the assignor's books, which were used also by the assignee, were made by the assignor, it not having been first shown that the witness knew the assignor's handwriting.

4. *Testimony of party as to his uncommunicated purpose or intention.* Where in a suit by a creditor attacking an assignment for fraud, a witness testifies to a conversation, occurring a month or two prior to the assignment, between him and the assignor concerning certain failures, in which the latter remarked he did not know but that he might be forced to make an assignment himself, that if it were not for the name of the thing he would do so, it was competent for such assignor in rebuttal to make any reasonable explanation of such remark, but not to state the uncommunicated intention or purpose which actuated him to make the statement; such purpose was to be arrived at from what he then said and all then existing circumstances throwing light on the conversation.

5. *Testimony that alleged fraudulent assignment was made on legal advice.*—In an action where the *bona fides vel non* of an assignment is in issue it is competent for the assignor to detail the circumstances under which the instrument was executed, including the fact that it was made after taking legal advice.

6. *Objection to testimony; badge of fraud.*—Where the assignee under a deed of assignment had been a clerk in the assignor's store, and after the assignment he gave to tenants on the plantation of the assignor's wife orders for goods, contained in a warehouse, consigned to the assignor on which were the initials of such tenants, and the assignor testified that the goods in the warehouse marked to tenants were his wife's goods and were for tenants on her place, and that he shipped all cotton, his own and his wife's, in the name of the assignor's

VOL. C.

[Richardson Bros. & Co. v. Stringfellow.]

firm, but the goods at the ware house were shipped in the name of tenants of his wife to J. A. Mc. & Co. (the assignor's firm), it,was error for the court to refuse to allow the plaintiff to ask said witness "for whom were these goods purchased."

7. *Same; evidence as to value of property of wife of alleged fraudulent assignor.*—On a trial in which an assignment is attacked for fraud testimony as to how much the wife of the assignor was worth was properly excluded in the absence of evidence that she had received anything from her husband in fraud of his creditors

8. *Power of attorney to assignee in deed of assignment.*—The fact that in a deed of assignment for creditors a power of attorney is formally given to the assignee, and that he is in terms appointed the assignor's agent, does not render the assignment void, when it appears that his powers are to be exercised solely for the beneficiaries, and that the sole purpose is to better enable him to collect the assets and pay the debts.

9. *Reservation of homestead in assignment.*—The reservation by the assignor of his homestead, by the terms of the deed of assignment, does not invalidate such assignment

10. *Charge as to possession by assignor of assigned property after assignment*—A charge that the possession of the assignor, if he had any after the assignment, could be explained, and, if it was by permission of the assignee, it would not be fraudulent, is not erroneous as an invasion of the province of the jury, or for any other reason.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. SAMUEL H. SPROTT.

Action of attachment by Richardson Bros. & Co. against J. A. McKinstry, doing business as J. A. McKinstry & Co., in which E. Martin Stringfellow, as assignee for the benefit of creditors of McKinstry, interposed the statutory claim for the attached property, a stock of goods, and issue was formed on such claim. From a judgment entered on the verdict of a jury in favor of claimant, plaintiffs appealed.

The plaintiffs sought to set aside this deed of assignment on the ground of fraud. It was shown that the assignee was a clerk of McKinstry prior to the assignment, and that he had exclusive control of said business. The testimony for the plaintiffs tended to show that after the assignment McKinstry remained at the place of business, and acted in some capacity for Stringfellow in connection with the business. McKinstry testified, among other things, that in said deed of assignment he conveyed all of his property except his homestead. The deed of assignment, in the granting clause, contained the following: "The said party of the first part doth make and create and constitute and appoint the said party of the second part his true and lawful attorney and agent, with full power and authority to do, transact, and perform all acts and deeds, matters and things, which may be necessary in the premises; and to the full execution of the said trust, and for the purposes of said trust, to ask, de-

mand, and recover and receive of and from all and every person or persons all the property, debts, and demands belonging and owing to the said party of the first part, and to give acquittances and discharges of the same, and to sue, prosecute, and defend and implead for the same, and to execute and acknowledge and deliver all necessary deeds and instruments of conveyance, and also for the purpose aforesaid, or any part thereof, to make, constitute, and appoint one or more attorneys under him, and at his pleasure to revoke the same, hereby ratifying and confirming whatever the said party of the second part or his substitute may lawfully do in the premises." Upon the introduction of all the evidence, the plaintiffs asked the general affirmative charge in their behalf, and also asked the following written charge : "The court charges the jury that, under the assignment of J. A. McKinstry & Co., E. Martin Stringfellow was the agent of J. A. McKinstry & Co., and said assignment is void, and plaintiffs are entitled to recover," which charge the court refused, and the plaintiffs separately excepted. Plaintiffs also separately excepted to the court's giving each of the following charges requested by the claimant: (1) "The reserving of the homestead of McKinstry out of his assignment would not be such reservation of the property as to affect the validity of the assignment." (2) "The possession of McKinstry, if he had any after the assignment, could be explained, and, if it was by the permission of Stringfellow, then that possession would not be fraudulent."

E. D. WILLETT and D. C. HODO, for appellants.

M. L. STANSEL and McINTOSH & RICH, for appellee.

McCLELLAN, J.—We are unable to see what bearing the "commercial rating" of McKinstry could possibly have on any issue in this case. Such ratings are no more than the estimates of third persons as to a man's solvency, and the amount of credit which, in the opinion of such persons, may be safely given him ; and surely such estimates are not binding upon him, or any evidence for or against him as to his real pecuniary condition at the time to which they relate. They were sought to be adduced here to strengthen the idea, which found lodgment in a tendency of the evidence, that McKinstry had not embraced all his property in the assignment attacked as fraudulent, the proposition being, in other words, to establish the fact that A. B. had more property than he had conveyed to his creditors by evidence of the

fact that C. D. thought so at a given time, and had made a
memorandum of his belief. The proposed testimony was
properly excluded. The effort being to show that McKin-
stry, the debtor, remained in possession of the stock of
goods and continued in control of the business after the as-
signment to Stringfellow, the claimant here, plaintiffs asked
their witness "if McKinstry, after the assignment, was not
in control of the business." To this the reply was, "It seems
he was." This was excluded on motion of claimant, and an
exception reserved by plaintiffs. The witness might have
stated that McKinstry was in control of the business, if that
had been true to his knowledge. This would have been the
statement of a collective fact, which our decisions authorize.
*Iron Company v. Roberts*, 87 Ala. 436. But that was
not the form of his statement. He was unwilling to affirm
as a fact that which appeared—and even this at the time of
the trial—to him to have been a fact, but of which he was
not certain. He could only say "it seems" that Mc-
Kinstry was in control of the business; that is, such was
his conclusion, not his knowledge, but deduction from other
facts,—his mere opinion. The answer is not in form or sub-
stance, either with or without reference to the question, the
statement of a collective fact, or any fact at all, indeed. Its
exclusion involved no error.

If the court erred in refusing to allow the witness Edding
to give his opinion that certain figures in pencil on books of
McKinstry, which were used also by the assignee, were
made by McKinstry, the error was without injury to plain-
tiffs, since the witness afterwards, having stated that he knew
McKinstry's handwriting, was allowed to say that, in his
opinion, these figures were made by him. But this action
was not erroneous. No predicate had, at the time the
evidence was offered, been laid for such testimony; it had
not been shown that the witness knew the handwriting of
McKinstry. The remark testified to by Billups as having
been made by McKinstry within a month or two before the
assignment, to the effect that, if it were not for the name of
the thing, he would make an assignment himself, and that he
did not know but that he might be forced to make an assign-
ment, was a part of a general conversation, apropos of cer-
tain failures that had taken place in a neighboring city, the
subject being the depressed condition of business. It was
offered to show that McKinstry had had his final action in
mind for some time before the assignment was made. It was
clearly competent for McKinstry to rebut any prejudicial
inference sought to be drawn from this evidence by any

reasonable explanation he could give of the remark imputed to him. But it was not competent for him to state in explanation the uncommunicated intention or purpose which actuated him to make the statement. The court, therefore, should not have allowed him to say that, if he made the remark deposed to by Billups, his purpose was to illustrate the position he had taken in the conversation. His purpose was to be arrived at from what he then said, and all then existing circumstances throwing light on the conversation, and not by his statement on the trial as to what it was.

*Bona fides vel non* of the deed of assignment being the issue, it was competent for McKinstry to detail the circumstances under which the instrument was executed, and, among others, the fact that the assignment was made after taking legal advice in the premises. The testimony of Mc-Kinstry that he ascertained on the night before that an assignment would be necessary was manifestly in rebuttal of the inferences sought to be drawn from the evidence of Billups, and for this reason, if not upon other grounds, its admission was proper. At the time of the assignment there were certain goods in a warehouse at Newport, consigned to McKinstry. On the packages were letters which were shown to be the initials of tenants on the plantation of McKinstry's wife. After the assignment, Stringfellow gave negroes—presumably the tenants indicated by the marks on the packages—orders for these goods, and they were taken away by these negroes. McKinstry testified that "the goods in the Newport warehouse marked to tenants were the goods of L. E. McKinstry, [his wife,] and were for tenants on her place. I shipped all the cotton, my own and my wife's, in the name of J. A. McKinstry & Co., but the goods at Newport were shipped in the name of tenants of L. E. McKinstry to J. A. McKinstry & Co.," Plaintiffs, at this juncture, asked the witness "For whom were these goods purchased?" The court sustained an objection to this question, and plaintiffs excepted. It is to be assumed for the purpose of testing the point thus raised that the answer would have developed the fact that the Newport goods were purchased for McKinstry & Co., and this, taken with Stringfellow's proven intimate knowledge of McKinstry's business in all its details, would have authorized the jury to have inferred that at the time of the assignment these goods belonged to McKinstry and should have been taken by Stringfellow under the assignment, instead of being delivered on his order to tenants of Mrs. McKinstry. So finding, this transaction would have tended to show that Stringfellow was acting in reality for

McKinstry, in his interest, and at his bidding, and not for the creditors; and, though the circumstance might involve very little probative force, it was at least a badge of fraud which should have gone to the jury.

The value of the property owned by Mrs. McKinstry was not an issue in this case, there being no evidence that she had received anything from her husband in fraud of his creditors, and the court properly declined to allow the question, "How much is Mrs. McKinstry worth?" to be answered. Equally irrelevant was the inquiry whether Stringfellow had told Wimberly that he (Stringfellow) and Manning "had rented a part of McKinstry's home place, and three mules, and that he had paid the rent on the lands, on the mules, and one wagon." If these facts could be pertinent under any circumstances, the connecting circumstances are not shown, nor was it proposed to show them. For aught that appears, the land and personalty were exempted to McKinstry, and hence properly retained by him; and the transaction may well have been wholly disconnected with the assignment.

The theory upon which the plaintiffs asked the court to charge the jury "that, under the assignment of McKinstry & Co., E. Martin Stringfellow was the agent of J. A. McKinstry & Co., and said assignment is void, and plaintiffs are entitled to recover," is palpably unsound. It is true that by the deed of assignment a power of attorney was formally given Stringfellow, and he was appointed in terms the agent of McKinstry; but this power of attorney was to be exercised, and this agency was to be performed, solely for the beneficiaries under the instrument, McKinstry's creditors, and the sole purpose of this formal delegation of power and authority was to better enable the assignee to collect the assets, and, with them, pay the debts of the grantor. It has been many times decided that creditors have no ground of complaint on account of any disposition or reservation the debtor may make of his homestead. It is exempted to him, and is not property to which they have any right to look. The first charge given for the claimant asserts only this, and involves no error.

The second instruction for claimant is not open to the objection urged in argument, or any other. It is not at all invasive of the jury's province, but tells them only that the law admits of the explanation of possession of property,—a proposition no one will deny,—and that, if they believe from the evidence that McKinstry's possession had been explained, and believed further from the evidence that that

[Schuessler v. Simon.]

possession was by Stringfellow's permission,—by which we understand a possession under and consistent with the assignment,—it would not be a fraudulent possession. There is absolutely no assumption of fact here, but the whole inquiry is submitted to the jury.

For the errors pointed out above the judgment of the Circuit court is reversed.

The cause is remanded.