# Mobile, J. & K. C. R. R. Co. *v.* Hawkins.

*Assumpsit.*

(Decided Dec. 16, 1909. 51 South. 37.)

1. *Corporations; Authority of Officer.*—The authority of the officer who executed a contract for the defendant corporation, to make the contract sued on, was under the evidence in this case, a question for the jury.

2. *Same; Contract of Employment; Action for Breach; Burden of Proof.*—Where plaintiff alleges a breach of a written contract executed by an officer of the defendant corporation, employing him for one year at a certain salary, and the defendant by proper plea denies the execution of the contract either by itself or by anyone

authorized to bind it, the burden is on the plaintiff to show a contract as alleged and the authority of the officer to make it.

3. *Same; Services and Compensation; Pleading.*—Pleas denying or challenging the authority of the person who executed the contract sued upon to bind the corporation by such contract amounts to a denial of the validity of the contract, and should be verified.

4. *Same; Evidence.*—Where the action was against a corporation on an open account for services rendered to the corporation as its superintendent, plaintiff might show that the witness D., who was the general manager of the defendant company, and who had employed plaintiff and had knowledge of the service rendered by plaintiff, was an expert and the extent of his experience in railroad management.

5. *Same.*—Where the action was against the corporation for breach of contract for services to be rendered by plaintiff to defendant for one year, and the breach alleged was the discharge of plaintiff, a letter written by the general manager of the defendant corporation purporting to discharge him was admissible.

6. *Same.*—Where the suit was against a corporation based on a contract alleged to have been made with plaintiff by D., as general manager of the corporation, and the defense was that D., had no such authority, and had been discharged before the making of the contract, it was competent for the president of the defendant to testify that the board of directors had had several conferences in reference to D.'s conduct in connection with the management of the road, and that with the consent and knowledge of a majority of the directors he had discharged D., before the making of the contract sued on.

7 *Estoppel; Equitable; Conduct.*—While serving as defendant's superintendent, plaintiff had full knowledge of the controversy between defendant's president and its general manager, and at first determined to side with the president, but afterwards resigned and accepted an appointment under the general manager whom the president had discharged. Held, plaintiff was not in position to assert that the corporation could not subsequently ratify the acts of its president.

8. *Master and Servant; Contract of Employment; Breach; Jury Question.*—Under the evidence in this case it was a question to be determined by the jury as to what amount plaintiff should receive under the contract.

9. *Appeal and Error; Harmless Error; Pleading.*—Where defendant filed the general issue and three special pleas denying the authority of the person who executed the contract sued on to bind it, if it was error to sustain demurrers to the three separate pleas, it was harmless, since the defendant also filed the plea of non est factum under which and the general issue, it could interpose all matters of defense set up by the special pleading.

10. *Same; Record; Bill of Exceptions; Questions Presented.*—Where the interrogatory does not appear in the bill of exceptions an objection that the answer was not responsive thereto cannot be reviewed on appeal.

11. *Same; Reception of Evidence.*—Every presumption must be indulged in favor of the ruling of the trial court, and hence, where an interrogatory is not set out in the bill of exceptions, rulings on

[Mobile, J. & K. C. R. R. Co. v. Hawkins.]

an answer to the interrogatory cannot be reviewed on appeal, as a failure to object to the interrogatory might preclude objection to the answer.

12. *Winesses; Examination.*—A witness who is competent to testify may do so without being specially interrogated.

13. *Evidence; Documentary; Preliminary Proof; Attesting Witness.*—Where a contract is executed out of the state, the presumption will be indulged, in the absence of evidence to the contrary, that the attesting witnesses are nonresidents, so as to permit their signature to be shown or proven.

14. *Same; Handwriting.*—Where an attesting witness to a contract is a nonresident, the execution of the contract may be shown by proving the signature of the witness.

15. *Same; Best and Secondary; Facts Described in Writing.*—Where a fact collateral to the main issue is described in a letter, a witness may testify that he received a letter in relation to such fact without producing the letter.

16. *Same.*—Where the authority of D. who made the contract with plaintiff to bind the corporation was denied, because D. had been discharged, it was admissible to show that plaintiff received a circular letter from D., stating that he did not recognize the authority of the president of the corporation to discharge him, without producing the letter, since it was collateral and incidental matter, which may be shown aliunde.

17. *Same; Opinion or Fact.*—Where the action was for a breach of contract of employment contained in a letter, which was in evidence, but which made no reference to compensation, and where both the plaintiff and the writer of the letter both testified that nothing was said between them as to salary when the contract was made, it was not competent for plaitniff to testify that it was his understanding that his salary was to remain as before.

18. *Same; Opinion; Conclusion.*—Where the action was against a corporation under a contract executed by one whose authority was denied it is not competent for the president of the corporation to testify that such person was without such authority to make the contract after a certain testified date, since it stated a conclusion.

19. *Same; Conversation Inquired Into by Other Side.*—Where plaintiff had given his version of the conversation the defendant is entitled to introduce testimony as to its version of such conversation.

20. *Same; Admissibility.*—Where the suit was for breach of a contract which is executed by an officer whose authority to make the contract was denied because of the fact that he had been discharged before making the contract, it was competent for the officer alleged to have been discharged to answer whether or not he had accepted the discharge or whether or not he admitted the authority of defendant's president to discharge him, or as to whether he declined to be discharged; such statement being a shorthand rendering of a fact derived from other facts.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by John R. Hawkins against the M. J. & K. C. R. R. Co., for breach of contract of employment. Judgment for plaintiff and defendant appeals. Reversed and remanded.

McINTOSH & RICH, for appellant.—There is no possible theory upon which this defendant could have been held under the 1st and 2nd counts except that Dewey was the agent of the defendant to make this contract, and if this agency had been revoked and the plaintiff was informed of it, he could not recover on the contract for a breach thereof. There is a distinction between contract of employment and agency.—1 Morawetz on Corp. sec. 541. As to the sufficiency of the revocation of agency see.—Meacham's Agency, sec. 228. If this be true, then the pleas were good. The court erred in permitting witness to read the contents of the letter as no predicate was laid therefor.—*Home I. Co. v. Whiddon,* 103. Ala. 203. The court erred in admitting the contract as there was a plea of non est factum. —*Finney v. Iron Works,* 109 Ala. 485. Where no standard is fixed by which damages for a breach can be arrived at, the contract is too uncertain to be admissible.—*Beck v. West,* 87 Ala. 313; *Ins. Co. v. Osborne,* 90 Ala. 205; *Evans v. E. T. V. & G.,* 91 Ala. 268; *Pulliam v. Schimpf,* 109 Ala. 179. For this reason the alleged contract was inadmissible. The court should have admitted certain evidence tending to show a conspiracy between Dewey, the witness and the plaintiff. *M. & C. R. R. Co. v. Wood,* 88 Ala. 630; 8 Ia. 277; 2 Johns Chan. 252; 3 Comst. 53; 14 Ia. 327. The court erred in excluding from the jury the evidence of the witness Robinson, the president of the company. Where fraud is involved, the widest range and latitude is allowed in drawing out the evidence.—*Nelms v. Steiner*

*Bros.,* 113 Ala. 562, and authorities cited. This proof was sufficient to put the plaintiff on inquiry which if pursued, would have disclosed the fact that Dewey had no authority, and was in law notice of that fact.— *Boggs v. Price,* 64 Ala. 514; *M. & M. R. R. Co. v. Felrath,* 67 Ala. 189. Evidence of the ratification of Robinson's acts in removing Dewey should have been admitted.—Meacham's Agency, sec. 167; 1 M. & R. Dig. sec. 116. The affirmative charge was improperly given. 2 Mayf. Dig. secs. 18 and 49.

GREGORY L. & H. T. SMITH, for appellee.—The pleas to which demurrers were sustained were in effect, pleas of non est factum, and should have been verified. *Lazarus v. Sherrer,* 2 Ala. 718; *Mechanic's Bank v. Bank of Columbus,* 5 Wheat. 726; *Gainesvill Female Academy v. Browne,* 3 Ala. 326; *Ala. C. M. Co. v. Brainard,* 35 Ala. 476; *Miss R. R. R. Co. v. Sanford,* 36 Ala. 703; *M. & E. R. R. Co. v. Trebblers,* 44 Ala. 258; *M. & M. R. R. Co. v. Gilmer,* 85 Ala. 433; *Dexter v. Ohland,* 89 Ala. 268; *Ledbetter v. Vinton,* 108 Ala. 646; *Drayspring v. Loeb,* 119 Ala. 284; *Carter v. Long Bros.,* 125 Ala. 289. The defendant suffered no injury in the refusal of his charges if the plaintiff was entitled to the affirmative charge as given.—*Griffin v. Bass,* 135 Ala. 490; *W. U. T. Co. v. Whitson,* 145 Ala. 426. It is permissible to establish by a witness that he is an expert in the operation of railroads and knows the duties of the officers thereof.—*R. R. Co. v. Jones,* 19 Ala. 218; *Helton v. Ala. Mid.,* 97 Ala. 123; *Schlaff v. L. & N.,* 100 Ala. 389; *Brown v. L. & N.,* 111 Ala. 290. Hence, the court did not err in admitting Dewey's evidence in this connection. The contract was under the corporate seal which proved the authority of Stratton & Butler to execute it.—*Jinwright v. Nelson,* 105 Ala.

399; *Graham v. Partee,* 139 Ala. 130. The letter from Robinson discharging Dewey was collateral to the issue, and hence, its contents might be shown without its production or a predicate therefor.—*Neal v. The State,* 53 Ala. 465; *Glover v. Gentry,* 104 Ala. 222; *Foxworth v. Brown,* 120 Ala. 59; *Pentecost v. The State,* 107 Ala. 81; *Street v. Nelson,* 67 Ala. 504; *Griffin v. The State,* 129 Ala. 92. Dewey was properly permitted to state whether he accepted the discharge or admitted the president's authority to make it.—*Anniston C. L. Co. v. Edmundson,* 127 Ala. 416; *Morrissette v. Carr,* 118 Ala. 588. The letter, the basis of the contract, renewed a former employment, and this former employment was at a given salary, and although the contract was silent as to salary, it was competent to show that it was the understanding of the employe that he was to receive the same salary as formerly, as a measure of damages or compensation.—*Holloway v. Tolbert,* 70 Ala. 389; *Beadle v. Graham,* 66 Ala. 99. The question as to who is in possession of an office or of anything else is one of fact.—*Wright v. The State,* 136 Ala. 145; *Higdon v. Kennemar,* 112 Ala. 351. A witness may testify whether or not a certain person exercised authority or had the control of a certain office.—*R. & D. v. Hammond,* 93 Ala. 185; *Nelson v. Shelby Mfg. Co.,* 96 Ala. 531; *Richardson v. Stringfellow,* 100 Ala. 419. The question as to whether or not Whittlesby did surrender the office to Dewey and as to whether or not Dewey was in charge or control of the same, was not open to objection.—See authorities supra. It was competent for a witness to say he discharged the duties of his employment to the best of his ability.—*Hood v. Diston,* 90 Ala. 377. Directors cannot act in their official capacity by means of private conferences held by them outside of the directors meeting, and hence, it cannot be

said that Robinson's acts were ratified.—Thomp. on Corp. sec. 3906.

MAYFIELD, J.—This was an action brought by the appellee, plaintiff, against the appellant railroad company, defendant, for breach of contract for employment of the appellee, plaintiff, as superintendent of the appellant railroad company. The complaint contained three counts. The first declared upon a breach of a written contract by which the defendant employed the plaintiff as its superintendent for the term of one year from the 24th day of April, 1905, at the rate of $2,700 per annum, payable in monthly installments of $225 per month; the second count declared upon a breach of the same contract, which contract was set forth in hæc verba; and the third count of the complaint declared upon an account for $2,700 due from defendant to plaintiff on the 27th day of April, 1905. Each count was subsequently amended by the plaintiff by striking out the words and figures "twenty-seven hundred dollars" and by inserting in lieu thereof the words and figures "three thousand dollars," where the words and figures "twenty-seven hundred dollars" occurred, and by changing the words and figures "two hundred and twenty-five dollars," where the same occur, to "two hundred and fifty dollars."

The defendant to the original complaint filed four pleas: First, the general issue, and three other special pleas, challenging the authority of the person who signed the contract sued upon to bind the defendant. These pleas were likewise refiled to the complaint after it was amended. Demurrers were interposed to the last three pleas, 2, 3, and 4, as originally filed to the amended complaint, and were sustained both as to the original and amended complaint. The defendant sub-

sequently filed a plea of non est factum, in which it was averred that the alleged contract was not executed by the defendant, nor by any one authorized to bind it in the premises.

The case was tried on the pleas of the general issue and upon issue raised by the plea of non est factum, which resulted in a verdict and judgment for the plaintiff for the sum of $1,836. From this judgment the defendant appeals, here assigning as error the sustaining of the demurrers to his special pleas 2, 3, and 4, as originally filed and as amended, a number of rulings by the trial court as to the admission and exclusion of certain parts of evidence offered by the respective parties upon the trial, the giving of the general affirmative charge for the plaintiff upon his request in writing, and the refusal of the trial court to give several written charges requested by the defendant. It may be well to state the substance of the evidence and the effect thereof, as diversely contended for by plaintiff and by defendant.

It appears from the record that on the 30th day of September, 1903, the defendant railroad company entered into a written contract with one F. E. Dewey, by which he was appointed general manager of the defendant railroad company and to be elected second vice-president, the contract of employment to extend for three years from the time of making. This contract provided that Dewey should have complete charge of the department of maintenance, of ways, of equipment, traffic, and transportation, and that in and about the conducting of the business he should be unhindered and uninterfered with, except that he should receive and obey general instructions from the board of directors. The contract also provided that certain designated offices, to wit, those of auditor, secretary, and treasurer, should be filled by the board of directors, but contain-

ed no provisions as to the office or place of superintendent. It also provided that the railroad company reserved the right to provide a superintendent of systems, of accounting, and the handling of the funds, that the general policy of the road should be determined by the board of directors, and that the execution of all contracts, extending beyond a period of 12 months should be submitted to and approved by the board of directors before becoming effective. The contract was signed in the name of the defendant company, by W. D. Stratton, as its president, and attested by P. C. Butler, as the secretary of the company, and bore the corporate seal of the company. The said Dewey entered upon the discharge of his duties as general manager and vice-president soon after the execution of the contract, and, as far as it appears, continued so to act uninterruptedly until about the 22d of April, 1905.

It further appears that the plaintiff was employed as superintendent of the defendant railroad company by the said Dewey on or about March 5, 1904, and that he continued to act as such superintendent until April 24, 1905. Whether this previous employment was by the year, and what amount of compensation was paid, is not made certain by the evidence as shown by the record. There seem to have been different contracts or agreements as to employment, and that the duties and compensation varied during this time. It also appears that the general manager had the power and authority to discharge subordinate officers, including the superintendent. It also appears that prior to the 22d day of April 1905, there arose a friction between Mr. Bird, Mr. Robinson, the president of the defendant railroad company, and Mr. Dewey, the general manager, arising from Mr. Dewey's unwillingness to abide by the instructions of the president; that on the 22d day of

April, 1905, Mr. Robinson, the president, who resided in New York, came to Mobile, and there met Mr. Dewey, and on that date requested him to resign as general manager of the said company, stating to Mr. Dewey that a large majority of the board of directors so desired. Mr. Dewey declined to resign, or to obey the directions of Mr. Robinson, whereupon Mr. Robinson, as president, wrote a letter to Mr. Dewey, as manager, discharging him as general manager of the company, and delivered it to Mr. Dewey. Mr. Dewey refused to recognize the authority of Mr. Robinson to discharge him, and refused to give up the property to him; Mr. Robinson claiming that he was in charge of the property as president, and that in that capacity he relieved Mr. Dewey of all responsibility and of all connection with the company's affairs. Mr. Dewey replied that he would continue to act as the general manager. Mr. Robinson then and there appointed one Mr. T. F. Whittlesey general manager of the company, to take charge at once, who accepted the appointment. Mr. Robinson, as president, then requested the heads of the departments to meet at the office of the treasurer of the company at once. Among these heads was the plaintiff, John R. Hawkins. At this meeting Mr. Robinson introduced Mr. Whittlesey, the manager whom he had appointed, stating to them that he had discharged Mr. Dewey as manager, and that they should report to Mr. Whittlesey and receive instructions from him.

The officers or heads of the departments apparently acquiesced in this without protest, except Mr. Hawkins, the plaintiff in this suit, who was superintendent. The plaintiff stated at this conference that he desired to delay his final answer, so he might have time to think over it—that he might prefer to resign. While he was considering the matter of resigning or of con-

tiñuing under Mr. Whittlesey's management, he went with Mr. Whittlesey and the other officers through the shops, to afford Mr. Whittlesey opportunity to issue instructions. Later in the same day Mr. Hawkins met Mr. Robinson in the office, and then stated that he had decided to recognize Mr. Whittlesey as general manager, and was prepared to accept orders from him. Mr. Robinson testifies that it was then agreed between the plaintiff and himself that the plaintiff should continue as superintendent during the pleasure of the company.

Mr. Dewey had positively declined to recognize the authority of Mr. Robinson to discharge him or to interfere in the management of the affairs; and the friction between the two as to the control and management of the office and property of the company, during the remainder of that day and all the next day, which was Sunday, and for a part of the next succeeding day, seemed to intensify rather than abate, resulting in Mr. Robinson's excluding Mr. Dewey from the office then occupied by Mr. Dewey, and in the removal of the locks from the doors and the replacement of others. Mr. Dewey employed counsel to represent him in his effort to regain possession of his office and control of the property, and against what he claims were unwarranted acts of Mr. Robinson as president.

One more conference was held between counsel representing the railroad company, or Mr. Robinson, and counsel representing Mr. Dewey, the result of which, as contended by the plaintiff, was that Mr. Robinson withdrew his objection to Mr. Dewey's occupying the office of general manager, and that the latter continued to discharge the duties of the office until he was formally discharged by the board of directors, at a meeting held in New York; whereas, it is contended by the defendant, or by Mr. Robinson, the president, and his

attorneys, that the result of this conference was that Mr. Dewey was retained as vice-president, but was removed as general manager—that is, that Mr. Robinson had no power to remove him as vice-president, but did have to remove him as general manager, and that his occupation and connection after said 22d day of April, 1905, was as vice-president, and not as general manager.

Mr. Dewey, on the 22d or 23rd day of April, 1905, issued a circular letter, addressed to the heads of departments of the defendant company, stating that he did not recognize Mr. Robinson's authority to discharge him. On the 24th day of April, 1905—probably about noon of that day—the plaintiff resigned as superintendent of the railroad company, tendering his resignation to Mr. Whittlesey. On the same day—hour not shown—Mr. Dewey wrote the letter declared on in this action to the plaintiff, which was in words and figures as follows:

April 24, 1905.

"Mr. John R. Hawkins, Mobile, Ala.—Dear Sir: You are hereby reinstated as superintendent of the Mobile, Jackson & Kansas City Railroad Company and leased lines. Your employment to continue for one year from date hereof, unless removed for cause by proper authority, and, further, if charges are made for your removal, you are to have a reasonable time to be heard to defend such charges. Yours truly,

F. E. Dewey."

It does not certainly appear from the record whether this letter was written or delivered before or after the plaintiff tendered his resignation. However, this letter is the basis of this suit. On the 27th day of April, Mr. Whittlesey as general manager wrote a letter to the plaintiff discharging him as superintendent; so the

letter from Dewey, of the 24th, appointing the plaintiff general manager for the term of one year, is the contract [declared on and alleged to be breached or broken by the defendant, and the letter of Mr. Whittlesey to the plaintiff, of April 27, is the alleged breach. It appears that the plaintiff was paid in full for his services as superintendent for the month of April, 1905. This is shown by a voucher dated April 30th, payable to the plaintiff, for services during the month of April, 1905, as superintendent, in full payment to date, approved by T. F. Whittlesey, general manager, signed by the plaintiff on April 29, 1905, stamped paid by the City Bank & Trust Company, May 1, 1905, and stamped paid May 2, 1905, by the defendant railroad company. This voucher was introduced by both plaintiff and defendant. The action was brought on May 5, 1905. This, therefore, disposes of the third count, claiming on an open account.

The bone of contention in the trial court was whether Mr. Dewey or Mr. Whittlesey was the general manager of the defendant company from the 22d day of April to the 27th day of April, 1905, during which time (to wit, on the 24th day of April, 1905) Dewey, as general manager, wrote the letter to the plaintiff, "reinstating his as superintendent" of the defendant company—the plaintiff contending that all of Robinson's acts, as president, attempting to remove Dewey as general manager, prior to the formal action of the board of directors at New York on the 27th of April, were of no effect, while the defendant contends that such acts were effective to remove him as general manager, but not as vice-president; that in so removing him as general manager the president was acting under directions from a majority of the board of directors, given individually and not formally, at a meeting of the board; that this

37—163

act of the president was ratified by the executive committee of the board of directors, at a meeting of that committee on the 24th day of April, 1905; and that the action of the president of the 22d day of April, 1905, and also that of the executive committee of the 24th of April, were formally ratified before the meeting of the board of directors on the 27th of April, 1905. Consequently the sole question was whether or not the letter by Dewey to plaintiff, of the 24th of April, constituted a valid contract, as claimed by the plaintiff; whether or not it was breached by the letter from Whittlesey to plaintiff of April 27th, and, if so breached, what damages did plaintiff sustain thereby; and, third, did the breach occur without fault on the part of the plaintiff?

It is strongly and ably insisted by counsel for appellee, and was decided by the trial court below, that upon all the issues raised in that trial the plaintiff was entitled to the general affirmative charge. This is the main question involved in this appeal, as to which all others are, of course, secondary. Notwithstanding the able brief of counsel for appellee, filed in this cause, and the ruling of the learned trial court, we are unable to see how the general affirmative charge could be justified under the evidence as shown by this record. After a careful study of the case we are unable to conceive of any possible theory upon which this charge could be justified. With the plea of non est factum interposed, the burden of proof was upon the plaintiff to show the contract in writing, at least as declared upon, and the authority of Dewey to make it.

It is sufficient to say that certainly, as to the authority of Dewey to make it, it was a question for the jury, and not one for the court, under all the evidence in this case; but, even waiving that, it was a question

for the jury whether it was a contract to pay $3,000 a year, by monthly installments of $250, or one to pay $2,700 a year, by monthly installments at $225 per month; or, in other words, to say what the compensation to be paid was. The contract itself did not attempt to fix this. If fixed at all, it existed in parol and by implication, and the evidence as to this—to say the most of it in favor of the plaintiff—was that the amount was indefinite and uncertain.

The plaintiff's own testimony on this subject was that, when first employed, on March 5, 1904, he was paid $200 per month; that after May 1, 1904, and April 1, 1905, he was paid $250 per month; and that after the month of April, 1905, he was paid $225 per month —he saying in conclusion: "I do not recall whether or not the salary I was to receive subsequent to my reinstatement was mentioned in the letter reinstating me." The letter shows for itself that it was not mentioned. He further testified as follows: "I consider the amounts I received prior to and subsequent to April 24, 1905, or the time I was reinstated by Mr. Dewey until I was discharged by Mr. Whittlesey, a reasonable compensation for the services I rendered." Further, the witness says: "I cannot say that it was stated by Mr. Dewey that I should receive the same salary; but nothing was said to the contrary, and it was my understanding that my salary should remain the same." Was it the same that he received for April, 1905, the last month for which he was paid, or was it the same that he received for the first two months, to wit, March and April, 1904 ($200), or was it the $250 per month which he received between these two dates?

The second and third counts of the complaint, as last amended, allege in substance that the provisions of the contract of employment were for the term of one

year, and salary of $3,000 per annum, payable in monthly installments. If the plaintiff relies upon the contract, and alleges that by the terms thereof he was to receive $250 per month, this is certainly a material part of the contract, and also of the complaint, and, as we have shown, there could be no recovery under the third count; and, to put the case most strongly for the plaintiff as to the first and second counts, it was for the jury to say whether or not he had proven the averments. It was unquestionably error for the trial court to instruct the jury that they must find for the plaintiff.

We do not think there was any error in the trial court's sustaining plaintiff's demurrers to special pleas Nos. 2, 3, and 4, which were addressed to counts 1 and 2. The cause of action relied upon in each count was based upon a "written contract," which was the "foundation of the suit," and the effect of each one of these pleas was to deny the validity of the contract in writing declared on. This invalidity was set up, or attempted to be shown, by different averments in each plea; but the effect of all the pleas was the same—that is, to deny the validity of the written contract, the foundation of the suit. As was decided by this court in the case of *M. & M. R. R. Co. v. Gilmer,* 85 Ala. 433, 5 South. 138, the statute and rules of law announced by this court include "all cases where the instrument declared on is averred to be the defendant's act in law, or which is shown by appropriate allegation of fact to impose a legal obligation or claim on him." A long list of these authorities are quoted by counsel for appellee, in their brief, which were shown to extend from the case of *Lazarus v. Shearer,* 2 Ala. 718, down to the case of *Carter v. Long,* 125 Ala. 289, 28 South. 74, which chain of authorities is unbroken so far as we

have been able to find; and after an examination of each plea it is our opinion that each falls within the rule above declared, and that it should be verified by affidavit, and, if not so verified, that advantage may be taken thereof by demurrer. It is further true, as claimed by counsel for appellee in their brief, that if this be error it is without injury, for the reason that the defendant subsequently filed a plea of non est factum, and that under that and the general issue it could certainly have interposed all the defenses which it could have interposed under any one of the special pleas eliminated by the ruling on the demurrer.

We deem it unnecessary, and of no benefit to the parties or to the trial court, to discuss separately and decide separately as to every ruling of the trial court on the admission or the rejection of evidence, but will only discuss in a general way those questions that will recur upon another trial, should another trial be had.

There being a count in the complaint declaring upon an open account, and the witness Dewey being the person who had employed the plaintiff as superintendent, and being the general manager of the company, and one who had knowledge of the services rendered the defendant by the plaintiff, it was competent for the plaintiff to show that Mr. Dewey was an expert, and the extent of his experience as to railroad management, and consequently there was no error on the fourth, fifth, and sixth assignments, going to the admission of evidence to show Dewey's experience. The contract between Dewey and the defendant company, introduced in evidence, was not the contract sued on; but its admissibility and relevancy in the trial of this case arose incidentally and collaterally. Consequently, after an inspection of the contract, the mode of its execution, etc., it appears that this contract was executed out of

the state, and in the absence of proof the presumption will be indulged that the attesting witness was out of the state; and, this being true, the handwriting of the attesting witness, as well as that of the party executing, could be proven by any one who knew it. Therefore, under our statutes authorizing proof of written instruments by the party executing, and under the rule declared by this court, the execution of this contract was sufficiently proven to authorize its introduction in evidence.—*Smith v. Keyser,* 115 Ala. 455, 22 South. 149; *Caldwell v. Pollak,* 91 Ala. 353, 8 South. 546; *Allred v. Elliott,* 71 Ala. 224; *Guice v. Thornton,* 76 Ala. 466.

There was no errer in the court's allowing the plaintiff to prove as to what salary the plaintiff received from appellant during any time of his employment; for under some circumstances that was a material inquiry.

Nor was there any error in allowing the witness Dewey to testify as to the fact that Mr. Robinson had written him a letter relative to the friction between them, nor as to the contents of the letter. This writing, of course, was merely collateral or incidental to the main issue, and it was not necessary that it be produced, in order to let in parol evidence of its contents. *Costello v. State,* 130 Ala. 143, 30 South. 376; *Cobb v. State,* 100 Ala. 19, 14 South. 362; *Foxworth v. Brown,* 120 Ala. 59, 24 South. 1; *East v. Pace,* 57 Ala. 521; *Street v. Nelson,* 67 Ala. 504; *Winslow v. State,* 76 Ala. 42.

There was also no error in allowing the witness Dewey to answer the question whether or not he accepted the discharge, or admitted the authority of Mr. Robinson to discharge him, or whether he declined to be discharged, etc. This answer did not call for a

gratuitous opinion or conclusion as to a conclusion of law, but it inquired as to a conclusion of fact, or a shorthand rendering of fact, to be derived from certain other facts; consequently there was no error in overruling plaintiff's objections to the question, nor in declining to exclude the evidence of answers. These were manifestly questions of fact, and not of law.—*Thornton v. State,* 113 Ala. 47, 21 South. 356, 59 Am. St. Rep. 97; *Morrissett v. Carr,* 118 Ala. 588, 23 South. 795.

There was likewise no error in the trial court's admitting in evidence the letter from Dewey, as general manager, to the plaintiff. This letter constituted the contract upon which the suit was founded, and was declared upon in the complaint. While the plea of non est factum was interposed, the only way the execution of the letter could have been proven was by the testimony of the writer that he wrote it and that he delivered it. It was not a written document, attested or acknowledged, and consequently 'the very best proof was offered that was obtainable. Whether it constituted the contract or not was immaterial as to its being admitted in evidence.

Nor was there any error in allowing the witness Dewey to testify whether or not there was any discussion between Mr. Hawkins and himself with reference to salary. That question was a material inquiry, and did not contradict the terms of the contract.

There was no error in allowing the letter from Mr. Whittlesey to the plaintiff, or date April 27, 1905, purporting to discharge him as superintendent from the service of the defendant, to be introduced. The discharge of the plaintiff was one of the material issues, and this evidence was admissible, for consideration by the jury, in connection with the other evidence whether

or not the plaintiff was discharged by the defendant, and whether or not Whittlesey had the authority. It certainly had some tendency to prove the issue.

We find no reversible error in the action of the court in overruling objections to the deposition of John R. Hawkins. The question called upon the witness to state whether or not Mr. Robinson had withdrawn his claim of authority. The substance or effect of a conversation of this kind is all that it is ordinarily possible to obtain. The substance or effect is all that could be hoped to be obtained. To ask whether a person accepted or refused an offered proposition; whether he admitted, confessed, or denied a statement made by another person in his presence; whether he acquiesced, objected, or protested—of necessity calls for some kind of a construction of the conversation by the witness, and is all that can be obtained.—*Higdon v. Kennemer,* 112 Ala. 351, 20 South. 470; *Richardson v. Stringfellow,* 100 Ala. 419, 14 South. 283; *R. & D. R. R. Co. v. Hammond,* 93 Ala. 185, 9 South. 577; *Wright v. State,* 136 Ala. 145, 34 South. 233, and cases cited.

A witness may state a conclusion of fact; he is not required to state every fact separately from every other fact; he may state facts either separately or collectively. It is conclusions of law that he may not attempt to state; nor will he be allowed to draw a conclusion, or to state a conclusion which is to be drawn from several other facts—that would be the province of the jury; but it is not only permissible for a witness to sometimes state a conclusion as to a fact, but often absolutely necessary that he do so, if he testify at all relative to the fact. The rule prohibits merely the drawing or stating of conclusions of law, which are questions for the court, and of certain conclusions of fact which, under the issues and the evidence, are ex-

clusively questions for the jury, and to be determined from all the other facts or evidence in the case. These conclusions of fact are denominated by our court "shorthand rendering of facts," to distinguish them from mere gratuitous opinions, motives, and conjectures of the witness. A witness may testify that certain work was done in a workmanlike manner, that he controlled land for a certain person, that a person's character is good or bad, that a person seemed to be suffering, etc.—3 Mayfield's Dig. p. 468 et seq., which collects the authorities.

There was no error in the court's declining to exclude the evidence, offered by the plaintiff, that he had received from Mr. Dewey a circular letter, addressed to the heads of the departments, in which he stated in effect that he did not recognize Mr. Robinson's authority to discharge him, etc. This was collateral and incidental matter; consequently the best proof—the production of the letter or document—was not necessary.

It would have been reversible error in the court to refuse to exclude that part of the answer of the plaintiff to direct interrogatory—had there been an objection to the interrogatory, or could this court know that it was not responsive to the interrogatory—which was as follows: "But it was my understanding that the salary was to remain as before." This was certainly a gratuitious conclusion of the witness upon the construction of the letter, a question for the court and the jury, and not for the witness. Both the plaintiff and Dewey had testified that nothing was said between them, in connection with the making of the contract sued upon, as to the salary. What the salary, or the amount of the salary, was, was undoubtedly a question to be determined by the jury from the evidence; and,

the witness having stated that nothing was said about it between the parties, at the time of making it, and the written contract having been introduced in evidence, it was clearly error to allow this witness, who was the plaintiff, to testify that it was his understanding that his salary was to remain as before. It was in effect construing the letter. He had stated all the facts in connection therewith, and so had the witness Dewey, and he should not have been allowed to testify as to his uncommunicated understanding of the effect of the contract alleged. This was not a shorthand rendering of facts, within the rule above described, but an unwarranted statement by the witness of his uncommunicated understanding of a written contract.

But, the interrogatory not appearing in the bill of exceptions, it failed to appear that the answer was not responsive. The trial court cannot be put in error for refusing to exclude that part of the answer. So far as we can know, it may have been a direct answer to the interrogatory. If so, the objection should have been interposed to the interrogatory; otherwise, the party would be allowed to speculate upon the answer—if favorable, allow it; if unfavorable, move to exclude it. For the same reason, the action of the court in refusing to exclude other parts of answers cannot be revised on this appeal. The objection was based upon the ground that the answer was not responsive, and upon the further ground that the answer was not competent. Of course, we cannot pass upon the first objection without knowing what the interrogatory was, and though the answer might not be competent if the question had been objected to, yet failure to object to the question might prevent the defendant from moving to exclude the answer. This court must presume in favor of the ruling of the trial court, in the absence of anything to the contrary.

Whether or not a witness may testify that he performed the duties of his employment, or discharged the duties enjoined upon him by a contract of employment, is a question as to which the authorities in this state are in conflict (*Hood v. Disston*, 90 Ala. 377, 7 South. 732; *Clark v. Ryan*, 95 Ala. 406, 11 South. 22); but, in view of the condition of the bill of exceptions in this case, it would be dictum for us to attempt to reconcile this apparant conflict.

There was no error in refusing to exclude part of the third interrogatory to the plaintiff, as to the salary he had received before resignation, and as to its reasonableness, etc. The third count was based upon an open account, and such evidence might be material to the issues involved in this count, and also probably to show what the salary was, under the contract, as the contract did not provide or specify the amount.

There was clearly no error in declining to allow the witness Jones to testify as to the conversation he had with Mr. Dewey about making the contract with witness.

We think it error to exclude the statement of the witness Robinson as to the part of the conversation alleged to have been had with Mr. Dewey, as shown by assignments of error Nos. 27, 28, and 29, and the error is not cured because it is not shown affirmatively to be responsive to any interrogatory. The plaintiff had gone into all the conversations and transactions had on this occasion between Mr. Robinson and Mr. Dewey and their respective attorneys, and the testimony thus excluded was to a part of that conversation and transaction. The plaintiff having first gone into it, and introduced a part, the defendant was entitled to introduce the other part, and to have the witness Robinson state the conversation and transaction from his standpoint

The plaintiff having been allowed to introduce evidence tending to show the conversations and transactions between his own witness, Dewey, who was general manager, and the defendant's witness, Robinson, who was the president, and to prove, not only what transpired between these parties, but also what transpired and passed between their attorneys, it is clear that it is an injustice to the defendant to exclude this evidence because it was a part and parcel of the same conversations and the same transactions as to which the plaintiff had introduced testimony; nor do we think it necessary that it should affirmatively appear that it was in response to any interrogatory. A witness who is competent may testify without being specifically interrogated; and in view of the time at which this testimony was offered, and the conditions then obtaining, we cannot conceive of or presume any reason that would justify its exclusion.

We do not think, however, that there was any error (as set up in assignment No. 30) in excluding that part of witness Robinson's testimony in which he said that Mr. Dewey did not have any right, authority, or power, from him or from any other officer of the defendant company, after April 22, 1905, to execute in the name of the defendant company any contract. This was a 'conclusion both of fact and of law, and it was proper to exclude it.

But it was error to exclude that part of the evidence of the witness Robinson (as shown by assignment No. 31) which was to the effect that the directors of the defendant company had had frequent conferences with respect to Mr. Dewey's connection with the company; that Mr. Dewey had asserted the right to operate and control the defendant's property, independent of any control or direction from the chairman of the board of

directors, or from the president; and that the directors, in such conferences, had agreed that it was necessary to have him resign or removed, and that his act in attempting to remove him on the 22d day of April was with the knowledge and indorsement of the majority of the board of directors. This evidence, we think, was admissible and proper for the consideration of the jury, in determining whether or not Dewey had been discharged before he executed the contract with the plaintiff which was sued upon in this action. We cannot agree with counsel for appellee that, in order for the directors of a corporation to effectuate the removal of an officer of the company, such as a general manager (as in this case), it is necessary to have a formal meeting and that such action be taken at such formal meeting; for, as a matter of fact, a majority of the directors had agreed to the discharge of the general manager, and had instructed the president to discharge him, and such action was as effective, so far as any question involved in this case is concerned, as if it had been taken at a formal meeting and duly spread upon the minutes thereof.

It appears from the evidence in this record that it was stated by Dewey, by the plaintiffs, and by all the parties that the directors of the corporation did have the authority to appoint and discharge officers; but it is contended by plaintiff's counsel that it must have been exercised at a formal meeting. In this connection we cannot agree; but it is unnecessary to decide the question, for the reason that the evidence excluded was certainly admissible for the consideration of the jury, in determining whether or not Dewey had been discharged before the execution of the alleged contract. It will be observed that the witness, in referring to his attempt to remove Dewey as manager, says: "My act

in doing so was with the knowledge and indorsement of a large majority of the board of directors of the defendant company, and the various directors of the company have had frequent conferences with reference to Dewey and his connection with the company." Such evidence was certainly admissible for the consideration of the jury, even to say whether or not there had been such meeting of and action by the board of directors as justified the action of the president.

It may be conceded that the president of a corporation, as such, without more, has no inherent power or authority to discharge other officers, or to employ others after discharge; yet we do not think it necessary, in order to confer such power upon him, that it should be delegated at a meeting of all the directors, or that any record thereof should be made. The only essential thing is that he have authority from the board of directors, and we know of no reason why such authority could not be given orally as well as in writing. For a board of directors to act, it requires a majority. This evidence, if true, showed that a majority of the board of directors had acted, and the fact is further shown by the minutes of a subsequent meeting of the board of directors, held upon the very day on which Dewey attempted to execute a contract with the plaintiff. Consequently there was evidence tending to show that, if the act of the president was not originally authorized by the board of directors, acting as a body, it was authorized by a majority thereof, and was subsequently ratified by the directors acting as a body.

It is true, as Mr. Thompson says, in his admirable work on Corporations (section 3906 et seq.), that "the declarations of individual stockholders do not bind the corporation, but the authority given the directors to bind the corporation is not to the individual directors

scattered here and there, whose assent to the given act may be collected by a dilligent canvasser, but it is the board sitting and consulting together as a body. Individual directors, any number of them less than a quorum, have no authority as directors to bind the corporation. Of course, as to all matters involving the exercise of what might be termed legislative or judicial discretion, and which the directors cannot, therefore, delegate to others, they can only bind the corporation by acting together as a board. It is also true that a separate assent of a majority of the board of directors, obtained when they are not regularly convened and acting together as a board, is not binding upon the corporation in the absence of a subsequent ratification. When not consulting together and acting as a board, they are regarded as acting privately and unofficially." But in the same work (section 3949) it is also said by this learned writer that "while those powers of directors which involve the exercise of discretion in their collective character as a board in the management of the company's affairs cannot be delegated, yet it is within the contemplation of all schemes of corporations that the board of directors or truestees shall have the power to appoint and discharge subordinate agents to do the ministerial work of the company." If it be granted or conceded that this act of the directors, prior to April 27th, discharging Mr. Dewey, was void and of no effect, the act of the president and a majority of the directors was certainly ratified and confirmed by the action of the board of directors at a meeting on April 27th.

The plaintiff having full and direct knowledge as to the controversy between the president and Mr. Dewey, and having been given time in which to consider and determine which master he would serve, having first

decided to recognize the authority of Mr. Dewey's successor, whom the president had appointed on April 22d, and then subsequently having changed his mind and declined to serve the successor or the corporation in any capacity (evidenced by the tender of his resignation, as superintendent, on April 24th), and then again, even prior to the time of tendering his resignation, or after having entered into a new contract with Mr. Dewey, he is not in a position to say that the corporation could not ratify the acts which he knew of before he entered into the contract upon which he now sues.

We deem it unnecessary to further discuss the various assignments of error. Those we have discussed will be sufficient guide upon another trial.

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J. and SIMPSON and MCCLELLAN, JJ., concur.